(47 South. 540.)

No. 17,327.

McCLELLAND v. GASQUET.

In re GASQUET.

(Oct. 19, 1908. Rehearing Denied Nov. 16, 1908.)

1. COURTS (§ 207*)—COURTS OF APPELLATE JURISDICTION — SUPERVISORY JURISDICTION — PREMATURE APPLICATION.

The question of the prematurity of the application of a relator for a remedial writ is considered at the time that the rule nisi issues, directing the respondent to show cause why the writ should not be issued.

The writ will not be lightly dismissed on the plea of prematurity.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 613; Dec. Dig. § 207.*]

2. COURTS (§ 207*)—COURTS OF APPELLATE JURISDICTION—SUPERVISORY JURISDICTION.

There is no hard and fast rule binding the court always in an appellate case to refer a question brought up on an application for a remedial writ to the merits.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 613; Dec. Dig. § 207.*]

3. COURTS (§ 207*)—COURTS OF APPELLATE JURISDICTION — SUPERVISORY JURISDICTION — REMEDY BY APPEAL.

Generally, the questions that can be as well decided on appeal are referred to the appeal for decision, if no prejudicial delay is to result and there is no immediate necessity for the review of the cause presented on the application.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 613; Dec. Dig. § 207.*]

4. COURTS (§ 204*) — COURTS OF APPELLATE JURISDICTION—SUPERVISORY JURISDICTION— REMEDY BY APPEAL.

Under its supervisory jurisdiction, the court will review the point presented if the exigencies of the case require.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 204.*]

5. ACTIONS FOR SEPARATION.

A motion to dissolve the injunction in the case was denied by the judge of one division presiding for the absent judge of another division; at the same time, a conditional modification was made part of the order refusing to dissolve.

6. ACTIONS FOR SEPARATION.

The conditional modification was of no avail; it fell because of the refusal of one of the intended beneficiaries to accept the condition, and thereafter the pronouncement was that the order of refusal to dissolve would stand without modification.

7. ACTIONS FOR SEPARATION.

On the return of the absent judge, the question presented was the effect to be given to the order overruling the motion to dissolve the injunction.

8. COURTS (§ 204*) — COURTS OF APPELLATE JURISDICTION—SUPERVISORY JURISDICTION.

To whatever extent considered final by the judge of the court a qua, the appellate court, under its supervisory jurisdiction, may review the order overruling the motion to dismiss.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 204.*]

9. HUSBAND AND WIFE (§ 293*)—ACTIONS FOR SEPARATION.

On the application for writs of certiorari, prohibition, and mandamus, it appearing that there was an attempted modification of the injunction, the court directs that the lower court shall hear evidence and determine the title to property, whether it is owned by the community, and of what the community consists, whether it is all the paraphernal property of the husband or not, and pass upon any of the rights claimed by plaintiff in the first suit.

That the injunction shall stand as issued as relates to all the property of the community;

that as relates to the paraphernal property of the husband it is dissolved.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 293.*]

(Syllabus by the Court.)

Action by Kathryn J. McClelland against Fernand V. Gasquet, her husband, for separation. Petition by Fernand Vaughn Gasquet for writs of certiorari, prohibition, and mandamus. Writs applied for granted in part, and denied in part.

Bernard James Mayer and Denègre & Blair, for relator. Respondent Judge, pro se. Edgar Mayer Cahn, for respondent Mrs. Kathryn Jackson McClelland.

BREAUX, C. J. Relator brings two demands: One to prohibit plaintiff and to prohibit the judge a quo from proceeding further with the execution of the writ of injunction sued for by Kathryn Jackson McClelland; and the other, in the alternative, to modify the injunction and confine its effects to the community property, if there is any owned by the community between relator and his wife.

The relator and his wife, Kathryn Jackson McClelland, were married on the 25th day of May, 1908, and on July 9, 1908, Kathryn Jackson McClelland sued her husband, the relator, for a separation from bed and board.

The grounds of action in this suit were intemperance, ill treatment, public defamation, the infliction of blows, and the attempt to take her life.

She also charged in her petition that the defendant was expending and wasting large amounts which should have been expended for the community.

There were a number of allegations along that line.

She claims that the assets were subject to her claim; that she had a privilege and was entitled to alimony.

The purpose of the injunction, as she claimed, was to prevent her husband from unjustly and illegally disposing of the property standing in his name. She averred that if he carried out his purpose she would lose her rights and claims as a wife and her share in the community, also her lien, and that she would also lose her claim for alimony.

The property in question was described with some particularity.

The injunction which was issued seeks to prevent the husband from disposing of any of his property. The bank officers, as well as the relator, are ordered to hold the property in order that the status quo may be maintained. All of relator's paraphernal property is taken possession of by the court, and is held subject to the exclusive order of the court.

A short time after the suit for separation from bed and board had been filed, an inventory was taken in accordance with the order of the court, and it showed over $60,000 assets in the name of the husband.

The relator complains of the proceedings, and states at some length that he is wronged; that he has a right to the control of his property; that he is threatened with absolute want by the absolute and sweeping order of injunction; that he has no revenues, and not the wherewithal to buy even the most necessary things of life; that he is ill and in need of medical attention, and even these will be denied to him unless he can get control of his own.

After the inventory had been taken, as before stated, the relator interposed a rule to dissolve the injunction in so far as it affected his paraphernal property. He denied that the community had any assets; and averred that if it had any it was quite small, as they had been married only about two months before the petition for separation from bed and board was filed. He de-

nied that his wife has any claims or privilege on his property.

In the suit for separation from bed and board, the wife prayed for alimony.

To this prayer, relator answered that all of his property was paraphernal, and that he could not be ordered to pay alimony from his separate property.

The rule before referred to interposed by relator was tried before the judge of division B, who sat in the place of the judge of division A, who was ill at the time.

On the trial evidence was introduced. It consisted of an act of settlement between Mrs. Louise L. Gasquet and her children, among them the relator, on February 17, 1908. This was admitted to show his title to the property, and his contention now is that by a comparison of the inventory and the act of settlement it was made manifest that the property disposed of in the settlement and the property carried in the inventory is one and the same.

The court presided over by the judge of division B, acting for the judge of division A, declined to dissolve the injunction on the motion filed by relator to dissolve. He also declined to modify the injunction in the manner asked for by the relator.

The ground of the judge for thus declining was that the wife is entitled to an injunction as a matter of right, and that whether the property enjoined is separate, dotal, or community is to be decided on the merits; that the court had the authority to modify the injunction and consider the claim for alimony, mentioning at the same time that the cause belonged to another division of the court; the court presided over by him (that is, the judge of division B) would modify the injunction in so far as to allow the defendant, Gasquet, to receive from the property enjoined the sum of $300 per month, and to his wife he allowed the sum of $100 as alimony.

The judge left the modification to be accepted or rejected as the husband deemed advisable, and to remain in full force and effect until the judge of division A returned and directed otherwise.

Some time after the judge had thus decided, relator filed another rule to dissolve the injunction, and the plaintiff wife was called on to show cause, on the 21st of September, 1908, why the writ of injunction should not be dissolved; and she was also called upon at the same time to show cause why she should not return to the matrimonial domicile, which relator alleges she had left.

The judge of division A (the regular judge), on the 10th day of October, 1908, filed an answer before this court. It was filed after the rule nisi had been issued here, in which he stated that while away at his home ill he had been notified of the fixing of the rule to dissolve the injunction on the 28th day of September, 1908 (this was the rule filed after the decision by the judge of division B, presiding over the court temporarily). The judge states in this return that this notice was the first information that he had of the proceedings; that he had understood that in August last the judge of division B, acting for him in his absence, had heard the rule and had refused to dissolve the injunction. He stated that he did not know that the judge of division B, acting for him, had left anything for decision by the reservation referred to in plaintiff's petition; that he wrote to counsel that he could not reopen the question settled by the judge acting for him, but that, to facilitate counsel in having the ruling of the judge of division B reviewed, he accepted service. The judge also stated that he would be in court on October 16, 1908, to hear anything brought up for trial, if the rule to dissolve had not been finally closed, as he recently was informed was the case.

"Before the proper time," in substance, is the first objection urged by the plaintiff, Mrs.

Kathryn Jackson McClelland. Several decisions are cited by learned counsel representing her to support that proposition.

Learned counsel also in the same paragraph further urges that relator will have a right of appeal to set aside the refusal to dissolve the injunction, and that in consequence the writs applied for should not be issued; that it is premature application.

We will say in answer that if an error appears and is duly brought up the question of time is not all controlling. In other words, the error will not remain unquestioned to the very last only because it is urged before all the issues have been finally passed upon. The powers of the court under its supervisory jurisdiction are not thus limited. The court is not prevented by law from acting on an application made as in this case. Under the Constitution of 1879, the supervisory jurisdiction was not as broad as under that of 1898.

Under the former Constitution, this court held that it would exercise jurisdiction only in unappealable cases, leaving errors committed in appealable cases to be corrected in the ordinary course of appeal.

Yet, under the peculiar facts of one of the cases and the exigencies it presented, the court exercised its jurisdiction and issued the writ sued for. Broulliette v. Judge, 45 La. Ann. 244, 12 South. 134.

It is true that generally one in a suit has no right to the remedial writs when there is a right of appeal. This being the case, the parties can recover their rights and are not prejudiced by delay.

It does not seem that in the case in hand there should be extraordinary delay. The peculiarities of the issues and the exigencies of the litigation require attention at this time.

We infer that the judge a quo, to whom the case is to be remanded, is not very certain that he has authority to reopen the questions presented here. He was, and is still, so far as we know, under the impression that the issues have been settled by the decision of his temporary predecessor.

If the minutes are to control, and they certainly should in this case, they state positively that the rule to dissolve was denied by the judge of the district court, and this without reservation.

We have noted before the modification that his honor, the judge of division B, presiding over division A, made at the time. Although the subject was taken up by him after the decision on the motion to dissolve, after the relator had declined to accept the said modification in the decree of dismissal (which modification gave him the right to draw a certain amount for himself and wife) the court said, the order now will stand as it is; that is, as we understand, the original order dissolving the injunction remained after the refusal without modification.

In order to put all question at rest about the modification of the injunction, we have concluded to expressly set aside the modification as made and substitute another in accordance with the views of this court.

The judge who has to try the case said that he did not see his way clear to reopen the issues settled by the judge acting for him in his absence.

Neither do we, and for that reason we are of the opinion that the judgment to the extent can now be amended. We think that it should not stand in the way of regular proceedings until it can be reached on appeal.

We will take occasion to state here that courts will touch lightly for good reason and refer with care to the kindly offices of one who acts for another in his official or any other capacity.

The presiding judge of division B, who acted in the illness of the regular judge of division A during the warm season, while acting for himself as presiding judge kindly

consented to act for the absent judge. The error was one in which it was easily possible to fall.

As relates to the law, we have this to say: A wife who has sued for a separation from bed and board has the right to an injunction if there is danger that the husband will dispose of the property on which she has a right during the pendency of the suit; that is, when he is about to dispose of community property to her prejudice, or of property on which she has a privilege for dotal rights. The community property of spouses falls eo nomine under the terms of the law.

In this instance there can be only very little property belonging to the community. Since last May, the accumulation, if any, is surely small, if we are to judge by plaintiff's allegations that her husband is a spendthrift and that he is squandering his property.

As relates to dotal rights referred to in the law: There is no question here of any such rights; none are alleged, and none are claimed. True, she alleges that she has privileges on the paraphernal property of her husband.

Of what that privilege consists, we are not informed.

Whatever privilege she may have in this instance cannot give her the right, through the writ of injunction, *of seizing all of her husband's paraphernal property*, as has been done, and have it placed in the hands of the officers of the court, for months, it may be, and even for years, for the termination of litigation is not always a certainty.

We will state that certainly the wife should cling to her husband, but not so much to his property, on which she has no special privilege, or on which she does not allege that she has a special privilege.

She is entitled to maintenance; he can be made to pay it, not, however, by compelling him to surrender his property entirely.

In our view, the law contemplates nothing so grasping as here attempted.

In a contract of marriage, looking to unity, harmony, kindness, it cannot be that the wife has such a power. If such were the law, it would have a discouraging influence on the thoughtful and prudent. The high seas of matrimony, for which no compass has been invented, would not be made much better if the wife had the power, in injunction proceedings, to have her husband's property seized and held an indefinite time.

For reasons stated, the judgment of the district court is modified by setting aside and annulling that part which decreed that the husband should have $300 each month, and the wife $100. It is modified by making it a part of the judgment that the injunction is dissolved to the extent that all the paraphernal property of the husband has been taken possession of by the officers of the court and others; that is, the Hibernia Bank & Trust Company and others. The writ of injunction is made perpetual, but the injunctive order is set aside as relates to the husband's paraphernal property.

The court a qua will hear evidence and pass upon the title of the paraphernal property that is in the husband.

It is further ordered, adjudged, and decreed that in other respects the order remain as it is, and the matter is remanded to be disposed of according to law, plaintiff in the original suit, No. 86,614 of the district court, to pay the costs of these proceedings. It follows that, to the extent above stated, the writs applied for are granted, and are denied as relates to the property of the community. The writs applied for are granted in part, and in part denied.