764 So.2d 31 (1999)
LOUISIANA ASSOCIATED GENERAL CONTRACTORS, INC.
v.
NEW ORLEANS AVIATION BOARD.
No. 99-CA-0025
Supreme Court of Louisiana.
July 7, 1999.
L. Marlene Quarles, Alvin L. Moon, New Orleans, Ronald Joseph Vega, Kenner, Rebecca J. King, New Orleans, for Applicant.
W. P. Wray, Jr., Martha Jean Kegel, Christopher Paul Pierce, Baton Rouge, Charles William Roberts, for Respondent.
Martha Jean Kegel, Jane L. Johnson, William Patrick Quigley, New Orleans, for American Civil Liberties Union, Alphonse Jackson, Jr., Johnny Jackson, Greater New Orleans Chapter, National Organization of Women (Amicus Curiae).
TRAYLOR, Justice.[*]
The Louisiana Associated General Contractors filed a Petition for Declaratory and Injunctive relief against the New Orleans Aviation Board's Disadvantaged Business Enterprise Plan, alleging that it created unconstitutional race- and gender-based classifications. The trial court granted relief, and the Aviation Board filed a direct appeal with this court. This court determined that the trial court prematurely addressed the constitutional issue and remanded the case to the trial court. Upon remand, the trial court again held the Program unconstitutional. Both the Aviation Board and the Louisiana Associated *32 General Contractors appealed. Finding this case warranted direct appeal due to the constitutional issue involved, the appellate court transferred the case to this court. We granted the appeal in accordance with our supervisory jurisdiction. Because we find that the Program directly violates the New Orleans' Interim Disadvantaged Small Business Development Ordinance, we reverse the ruling of the trial court, but maintain the permanent injunction imposed.

FACTS AND PROCEDURAL HISTORY
The New Orleans Aviation Board (NOAB) adopted the "Disadvantaged Business Enterprise Plan for the New Orleans International Airport" (Program). The Program provides participation goals, preferences, and set-asides on airport and heliport related contracts for businesses that qualify as disadvantaged business enterprises (DBE). Before the NOAB will qualify a business as a DBE, at least fifty-one percent of a business must be owned and controlled by individuals who are socially and economically disadvantaged. Under the Program particular gender and racial groups are presumed to be socially and economically disadvantaged. This presumption may be rebutted if challenged by a third party.
On April 12, 1996, the Louisiana Associated General Contractors (LAGC) filed a Petition for Declaratory and Injunctive Relief against the NOAB alleging that the Program creates unlawful race- and gender-based classifications in violation of Article I § 3 of the Louisiana Constitution, which forbids the creation and application of laws that discriminate on the basis of race or "arbitrarily, capriciously, or unreasonably discriminate" on the basis of sex. LAGC further contended that Section 38:2233.2 of the Revised Statutes, which provides for set-asides in public works contracts for minority contractors, was also unconstitutional. Alternatively, LAGC alleged that the Program lacked authority because it violated the low bid requirements of the Louisiana Public Bid Law and the New Orleans Home Rule Charter by awarding contracts on the bases of race and gender. Upon LAGC's motion, the trial court issued a temporary restraining order which enjoined NOAB from receiving bids on the Project.
On September 30, 1996, LAGC moved for summary judgment based on this court's opinion in Louisiana Associated General Contractors, Inc. v. State, 98-2105 (La.3/8/96); 669 So.2d 1185, which found that the Louisiana Constitution absolutely bans race-based classifications. After a hearing, the trial court granted LAGC's motion for summary judgement declaring Rev. Stat. 38:2233.2 and the Program unconstitutional as to city projects, and permanently enjoined NOAB from utilizing the Statute or the Program in non-federal public works projects.
NOAB appealed the trial court's ruling directly to this court pursuant to La. Const. Art. V, § 5 (D), which allows a petitioner to appeal the case directly to the supreme court if a law or ordinance has been declared unconstitutional. Noting that courts should avoid constitutional rulings when the case can be disposed of on the basis of non-constitutional issues, this court held that the trial court had prematurely addressed the constitutional issue. Louisiana Associated General Contractors, Inc. v. New Orleans Aviation Board, 97-0752 (La.10/31/97); 701 So.2d 130. Consequently, this court vacated the trial court's judgment and remanded the case to the trial court for consideration of whether the NOAB had authority under local law to adopt the Program.
Following remand, the trial court ruled that the City of New Orleans Home Rule Charter gave NOAB authority to adopt the Program. However, the trial court again declared the Program an unconstitutional violation of Article I, § 3. The trial court issued a permanent injunction restraining NOAB from enforcing the Program on any non-federal works projects.
*33 NOAB appealed the trial court's ruling of unconstitutionality to the court of appeal, and LAGC cross appealed the trial court's ruling that NOAB had authority under local law to authorize the Program. On motion by LAGC, the court of appeal transferred the matter to this court pursuant to La. Const. Art. V, § 5 (D), because the matter involved a constitutional issue.
Upon review, we find that because the trial court declared a "program" unconstitutional, as opposed to a "law or ordinance" under La. Const. Art. V, § 5 (D), the LAGC did not have a right of direct appeal to this court. However, we decide to grant this case according to our supervisory jurisdiction under La. Const. Art. V, § 5 (A) in order to avoid further delay in the disposition of this matter which we previously remanded to the trial court. See also Progressive Sec. Ins. Co. v. Foster, 97-2985 (La.1/23/98); 711 So.2d 675, 694. State Bond Com'n v. All Taxpayers, Property Owners, and Citizens of State, 510 So.2d 662, 663 (La.1987); See also State v. Peacock, 461 So.2d 1040 (La. 1984); Hainkel v. Henry, 313 So.2d 577 (La.1975); McClelland v. Gasquet, 122 La. 241, 47 So. 540 (1908).

LAW AND DISCUSSION
The City of New Orleans' "Interim Disadvantaged Small Business Development Ordinance" (Interim Ordinance), authorizes establishment of "a program for participation goals, preferences, and set-asides in city contracts and procurement for firms owned by socially and economically disadvantaged persons," and "[provides] for the interim suspension of all race-based set-asides, goals, and preferences." Under the Interim Ordinance, if a public works or construction project exceeds $50,000, the general contractor is required to make a reasonable effort to subcontract at least twenty-five percent of the total dollar in subcontracts to New Orleans' DBE's.
To qualify as a DBE under the ordinance, at least fifty-one percent of the business must be owned and controlled by socially and economically disadvantaged individuals. According to the Interim Ordinance, socially disadvantaged individuals are "individuals ... who have been subjected to discrimination, prejudice, or cultural bias because of their identity as a member of a group without regard to their individual qualities." The social disadvantage must stem from circumstances beyond their control. Also, the Interim Ordinance defines economically disadvantaged individuals as "those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities, as compared to others in the same or similar line of business and competitive market area who are not socially disadvantaged." Before a person can qualify as a socially disadvantaged individual, the person must prove by clear and convincing evidence he has actually suffered a disadvantage. Merely claiming membership in a group which may be considered socially disadvantaged is not enough to qualify for disadvantaged status under the Interim Ordinance.
When determining which businesses qualify as economically or socially disadvantaged, the Interim Ordinance strictly forbids race- and gender-based discrimination or preferential treatment. Section 2-604(A)(1) of the Interim Ordinance states:
A) 1)No person or business firm shall be certified for inclusion or included in the registry of firms owned and controlled by socially and economically disadvantaged persons and no contract shall be set aside for award, nor shall any person or firm be awarded any city contract or subcontract or preference in contracting, subcontracting or vending to or with the city, on the basis of race, color, creed, national origin, or gender.
The Interim Ordinance also prevents the City of New Orleans from issuing or carrying out any policy dealing with city contracts that provide preferential treatment *34 on the basis of race or gender. Section 2-603 provides that all ordinances, executive or administrative policy memoranda, directives, or orders which require or authorize race- or gender-based preferences in city contracts are, on an interim basis, superceded and suspended by the Interim Ordinance.[**]
According to the NOAB Program at issue individuals who belong to the following groups are presumed socially and economically disadvantaged:
(a) Women;
(b) African Americans, which includes persons having origins in any of the Black racial groups of Africa;
(c) Hispanic Americans, which includes persons of Mexican, Puerto Rican, Cuban, Central or South American, or other Spanish or Portuguese culture or origin, regardless of race;
(d) Native Americans, which includes persons who are American Indians, Eskimos, Aleuts, or Native Hawaiians;
(e) Asian-Pacific Americans, which includes persons whose origins are from Japan, China, Taiwan, Korea, Vietnam, Laos, Cambodia, the Philippines, Samoa, Guam, the U.S. Trust Territories of the Pacific, and the Northern Marianas; and
(f) Asian-Indian Americans, which includes persons whose origins are from India, Pakistan, and Bangladesh.
Generally, the NOAB does not investigate the actual disadvantaged status of those individuals presumed to be disadvantaged unless their status is challenged by a third party. If challenged, the business may lose its status as a DBE if, for example, it is proved that the day-to-day activities of the business are not controlled by disadvantaged owners.
Individuals who do not belong to one of the aforementioned groups may also apply for DBE qualification to be reviewed on a case by case basis. No presumption is afforded to individuals whose race or gender is not listed in the Program. Before the NOAB will certify these individuals, they must prove that their disadvantaged status arises from individual circumstances, rather than by membership in a particular group.
Pursuant to the Program, the NOAB established a fifty percent participation goal for its Project No. 45-93-01W, entitled the "West Taxi Lot Lounge and Staging Facility at the New Orleans Airport" (Project). According to the Program's requirements, the general contractor selected for the Project is obliged to make a good faith effort to award a least fifty-percent of the total subcontract dollars to DBE's. To demonstrate good faith effort, the general contractor is required to document the steps taken in seeking out and considering DBE's as potential subcontractors. The documented steps must include certain enumerated actions, such as contacting two or more DBE's and affirmatively soliciting their interest, capability, and price quotations. If a general contractor fails to comply with the Program's requirements, it is deemed a non-responsive bidder, even if it submitted the lowest bid.
We find that the Program facially violates the Interim Ordinance on two points. First, the Program's standard for determining if an individual is socially and economically disadvantaged falls far below the standard commanded by the Interim *35 Ordinance. Under the Program, if an individual is female or belongs to a specific race-based group included in the Program's list, he is presumed to be socially and economically disadvantaged. The Interim Ordinance, however, refuses to consider an individual as disadvantaged simply because the individual belongs to a particular race or gender group. The individual must provide clear and convincing evidence that proves he actually suffered a disadvantage by belonging to a particular group. The Interim Ordinance's burden of proof falls upon the individual seeking disadvantaged status. However, no burden of proof exists under the Program unless the presumption is rebutted by a third party. Thus, we hold that the Program's presumption on its face violates the clear and convincing standard required by the Interim Ordinance.
Second, the Program violates § 2-604 of the Interim Ordinance which forbids showing preference toward or discriminating against individuals on the basis of gender or race when qualifying them for socially or economically disadvantage set-aside contracts. The Program specifically states that individuals who are female or belong to a specific race-based group automatically qualify as socially and economically disadvantaged. Thus, if they own and control at least fifty-one percent of the business they are automatically allowed to bid on and receive up to one hundred percent of the full dollar amount of the contracts offered to subcontractors under the Program. However, the individuals who are not included within the Program's list of people presumed to be disadvantaged, may only bid on and receive up to fifty percent of the full dollar amount of the contracts offered to subcontractors under the Program unless they can prove that they have actually suffered a disadvantage because of their individual circumstances. During oral arguments before the trial court, NOAB's council conceded that the Program's requirements provided preferential treatment on the basis of race and gender by stating, "This is just a preference.... It is not a set aside." We agree with the argument that the Program's presumption is preferential but we further hold that it also allows unlawful discriminatory practices by providing set-asides on the bases of race and gender.

CONCLUSION
Because the Program's burden of proof for qualifying individuals as socially disadvantaged falls short of the burden required under the Interim Ordinance and because the Program provides preference toward individuals on the basis of race and gender when awarding public works contracts, we hold that the Program is prohibited by the City of New Orleans' Interim Ordinance. Therefore, we reverse that part of the ruling of the trial court which held that the NOAB had authority under local law to adopt the Program, and maintain the permanent injunction imposed by the trial court.

DECREE
REVERSED.
CALOGERO, C.J., concurs and assigns reasons.
JOHNSON, J., dissents and will assign reasons.
CALOGERO, C.J., concurring.
I concur in the majority opinion which holds that the Aviation Board's Disadvantaged Business Enterprise Program violates the City of New Orleans' Interim Ordinance, and I write separately to express my views on this issue.
Since the New Orleans City Council had in effect, at least prior to its passage of the Interim Ordinance, ordinances and policies which authorized the use of race-based set asides or other preferences in City contracts, I viewed with suspicion plaintiff's argument, and now the majority's resolution, that the Aviation's Board's program ran afoul of the City's Interim Ordinance *36 No. 13139 of 1989. However, with a better understanding of the historical context out of which the Interim Ordinance arose, I now understand its genesis and the majority's conclusion.
The United States Supreme Court in City of Richmond v. J.A. Croson Co., 488 U.S. 469, 492, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) stated that while the states and their local subdivisions have the legislative authority to eradicate the effects of private discrimination, they must exercise that authority within the constraints of the Fourteenth Amendment. Croson held violative of the Fourteenth Amendment a city plan which denied certain citizens the right to compete for a certain percentage of public contracts based solely on their race. It was in response to that decision out of the United States Supreme Court, that the New Orleans City Council, which apparently already had in force an affirmative action program, acting on the advice of the city attorney, suspended the earlier program. It simultaneously passed the Interim Disadvantaged Small Business Development Ordinance, which at the direction of the City Council was designed to avoid constitutional infirmity by comporting with Croson, supra.
This is the frame work of the Interim Ordinance under the terms of which socially and economically disadvantaged individuals could be afforded some degree of preference. The Interim Ordinance specifically states that "[i]ndividuals must establish their social disadvantage on the basis of clear and convincing evidence." (Interim Ordinance II E 4(b)), and additionally, that "[t]he individual's social disadvantage must stem from his or her cultural or educational background; developmental deprivation; dialectical variation from prevailing speech patterns; physical handicap; long-term residence in an environment isolated from the mainstream of American society; or other similar cause not common to small business persons who are not socially disadvantaged." Id. at 4(b)(2) (emphasis added). The ordinance goes on the require that the "individual must demonstrate that he or she has personally suffered social disadvantage, not merely claim membership in a group which could be considered socially disadvantaged." Id. at 4(b)(2) (emphasis added). What the Interim Ordinance affirmatively stated, obviously to conform with Croson, was that there shall not be discrimination on the basis of race, color, or creed. Consistent with that, the ordinance, at Section 2-604 provides:
No person or business firm shall be certified for inclusion or included in the registry of firms owned and controlled by socially and economically disadvantaged persons and no contracts shall be set aside for award, nor shall any person or firm be awarded any City contract or sub-contract or preference in contracting, sub-contracting or vending to or with the City, on the basis of race, color, creed, national origin, or gender.
The Aviation Board's Program, including as it does race and gender based presumptions of social and economic disadvantage and showing a preference to individuals on the basis of race or gender when qualifying them for set-aside contracts, does discriminate on the basis of race and gender and is therefore impermissible under the terms of the Interim Ordinance.
The Interim Ordinance, passed in 1989, has apparently not been subsequently amended. It appears applicable to all city agencies, of which the Aviation Board is one. LSA-RS 2:351A (West Supp.1999). It was in 1992 that the Aviation Board instituted the affirmative action program which is under attack in this case.
The majority concludes that the constitutionality of the Aviation Board's Program need not be addressed if we find that it is not authorized by local law. The Aviation Board argues that the authority for implementing the program stems from the City of New Orleans Home Rule Charter. As I perceive it, the Home Rule Charter gives the City of New Orleans *37 a great deal of power, and the City Council expressed that power in the Interim Ordinance, which states that affirmative action programs are permissible as long as there is no discrimination on the basis of race. The Aviation Board is bound by the Interim Ordinance, and to the extent that its DBE program violates the Interim Ordinance, it is not legal.
I believe that the Aviation Board's affirmative action program is not authorized by the Home Rule Charter nor by the Charter as implemented by the legal ordinances thereunder.[1] That being the case, the majority is correct in pretermitting consideration of whether the Program, were it otherwise legal, violates Article I, Section 3 of the Louisiana Constitution.
This Court could send this case back to the court of appeal because the Program that the trial court declared unconstitutional is not a "law or ordinance" and therefore La. Const. art. V, sec. 5(D) does not provide for a direct appeal to this Court. We are, however, at liberty to decide the case since writs were granted and the whole case is before us. Sending it back to the court of appeal would be contrary to the concept of judicial economy and the interest of the parties in having this lawsuit concluded. These considerations prompt me to favor resolution of the issue now. Furthermore, this disposition will facilitate any contemplated effort by the Aviation Board and the City Council, should they respectively so decide, to amend the Program to comply with the Interim Ordinance or to amend the Interim Ordinance in a constitutionally acceptable way under Croson, supra.
NOTES
[*] KNOLL, J., not on panel. See Rule IV, Part 2, § 3.
[**] The section reads in pertinent parts:

Articles XVIII and XIX and Section 2-50.5 of Article V of this Chapter, Executive Orders 84-01 and 83-02 (as originally issued and as supplemented and/or revised) and those provisions of all other ordinances, executive or administrative policy memoranda, directives, or orders which require or authorize the use of race-based or gender-based goals, set-asides, or other preferences in City contracts or procurement are, on an interim basis, (unless and to the extent that federal law requires otherwise), suspended and superseded by this Article, as of the effective date hereof and for so long as this Article is in effect. The provisions of Sub-Section II(A) of Section 2-602 of this Article shall become effective on the tenth day following the effective date of this Article.
[1] There is no specific reference in the Charter to affirmative action programs or powers in that respect. The argument made by the Aviation Board is that the nature of the power authorized by the Home Rule Charter is so comprehensive that it necessarily authorizes the program at issue.