860 So.2d 22 (2003)
GREATER NEW ORLEANS EXPRESSWAY COMMISSION
v.
Honorable Rebecca M. OLIVIER, Judge, First Parish Court, Division "A" and Honorable George W. Giacobbe, Judge, First Parish Court, Division "B".
No. 2002-CA-2795.
Supreme Court of Louisiana.
November 18, 2003.
Thomas P. Anzelmo, Sr., Kyle P. Kirsch, Geoffrey J. Orr, Burgess E. McCranie, Jr., Metairie, for Applicant.
Richard C. Stanley, Jennifer Thornton, Stanley, Flanagan & Reuter, New Orleans, for Respondent.
KIMBALL, J.
This case involves a direct appeal to this court pursuant to La. Const. art. V, § 5(D) from a judgment of the district court denying plaintiff's petition for writ of mandamus. We find that this court lacks appellate jurisdiction and transfer the case to the appropriate court of appeal.

*23 Facts and Procedural History
The Greater New Orleans Expressway Commission ("GNOEC") polices the Huey P. Long Bridge and operates, polices, and maintains the Lake Pontchartrain Causeway Bridge. Pursuant to La. R.S. 32:57(G)(1), an additional five dollar cost is imposed on "any person who is found guilty, pleads guilty, or pleads nolo contendere to any motor vehicle offense when the citation was issued for a violation on the Huey P. Long Bridge or the Lake Pontchartrain Causeway Bridge or approaches to and from such bridges by police employed by" the GNOEC. La. R.S. 32:57(G)(2) requires that the proceeds generated by this additional cost be deposited into the state treasury, then credited to a special fund that shall be used by the GNOEC to supplement the salaries of P.O.S.T. certified officers and for the acquisition and upkeep of police equipment.[1]
Judges Rebecca Olivier and George Giacobbe of the First Parish Court for the Parish of Jefferson have declined to collect the additional five dollar cost in cases arising in their jurisdiction on the ground that La. R.S. 32:57(G) is unconstitutional. On December 6, 2001, the GNOEC filed a petition for writ of mandamus against Judges Olivier and Giacobbe in their capacities as public officers, seeking the issuance of a writ of mandamus directing the judges to comply with the provisions of La. R.S. 32:57(G)(1). In answer to the GNOEC's petition, defendants alleged La. R.S. 32:57 is unconstitutional on several grounds.
The district court denied the GNOEC's petition for writ of mandamus. In written reasons for judgment, the district court found that defendants had sufficient interest to question the constitutionality of La. R.S. 32:57(G) and determined that La. R.S. 32:57(G) is unconstitutional on several grounds.
The GNOEC appealed the district court's judgment directly to this court, claiming we have jurisdiction pursuant to La. Const. art. V, § 5(D).

*24 Discussion
La. Const. art. V, § 5(D) provides, in pertinent part, that "a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional...." In the instant case, the district court's judgment simply denied the petition for writ of mandamus filed by the GNOEC; it did not declare La. R.S. 32:57(G) unconstitutional. It is only in written reasons for judgment that the district court opined the statute is unconstitutional. A judgment and reasons for judgment are two separate and distinct documents. La. C.C.P. art.1918. Appeals are taken from the judgment, not the written reasons for judgment. See La. C.C.P. arts.2082, 2083; Fisher v. Rollins, 231 La. 252, 260, 91 So.2d 28, 31 (1956); Huang v. Louisiana State Bd. of Trustees for State Colleges and Universities, 99-2805, p. 5 (La.App. 1 Cir.12/22/00), 781 So.2d 1, 6; McCalmont v. Jefferson Parish Sheriff's Office, 99-940, p. 6 (La.App. 5 Cir.1/12/00), 748 So.2d 1286, 1290, writ denied, 00-0679 (La.4/20/00), 760 So.2d 1160. Because the district court's judgment did not declare La. R.S. 32:57(G) unconstitutional, we do not have appellate jurisdiction pursuant to the provisions of La. Const. art. V, § 5(D). Accordingly, this case is transferred to the court of appeal.

Decree
For the reasons assigned, we find this court does not have appellate jurisdiction over this case pursuant to the provisions of La. Const. art. V, § 5(D). This case is transferred to the Fifth Circuit Court of Appeal.
Case transferred to Fifth Circuit Court of Appeal.
KNOLL and WEIMER, JJ., dissent and assign reasons.
VICTORY J., dissents for the reasons assigned by KNOLL and WEIMER, JJ.
KNOLL, Justice, dissenting.
In my view, the instant matter should not be transferred to the court of appeal. Rather, this court should render an opinion pursuant to its general supervisory jurisdiction over all other courts. See LA. CONST. ART. V, § 5(A). "If an appeal is taken to this court when such remedy is not available, the court may in its discretion treat such appeal as an application for supervisory or other writs." La. Sup.Ct. Rule I, § 11.
The Louisiana Supreme Court has been granted supervisory powers since the constitution of 1879. Albert Tate, Jr., Supervisory Powers of the Louisiana Courts of Appeal, 38 Tul. L.Rev. 429, 430 (1964). The constitutional grant of supervisory authority to this court is plenary, unfettered by jurisdictional requirements, and exercisable at the complete discretion of the court. State v. Galliano, 02-2849, p. 3 (La.1/10/03), 839 So.2d 932, 935 (Calogero, C.J., dissenting); Progressive Sec. Ins. Co. v. Foster, 97-2985, p. 2 (La.4/23/98), 711 So.2d 675, 678 n. 3; State Bond Comm'n v. All Taxpayers, Prop. Owners and Citizens of State, 510 So.2d 662, 663 (La.1987); State v. Wimberly, 414 So.2d 666, 670 (La.1982); Loeb v. Collier, 131 La. 377, 59 So. 816 (1912); State ex rel. Union Sawmill Co. v. Summit Lumber Co., 117 La. 643, 42 So. 195 (1906); Tate, 38 Tul. L.Rev. at 430; Comment, Supervisory Powers of the Supreme Court of Louisiana Over Inferior Courts, 34 Tul. L.Rev. 165 (1959). The court can at all times intervene under its own plenary supervisory powers, whether or not an intermediate court has acted on the matter. Tate, 38 Tul. L.Rev. at 430. This court has a long history of exercising its supervisory jurisdiction when, in its wisdom, it deems it necessary.
*25 That is not to say that this court exercises its supervisory jurisdiction lightly. In practice, certain limitations upon the use of this power are recognized by this court out of respect for the independence of other courts in the determination of questions confided to their judicial discretion, and to avoid usurping merely appellate jurisdiction not conferred upon us by the constitution. Wimberly, 414 So.2d at 670 (citing Tate, 38 Tul. L.Rev. at 431; Comment, 34 Tul. L.Rev. at 168). However, there are instances in which writs have been granted even though the relator did not exhaust his remedies in the lower court. Comment, 34 Tul. L.Rev. at 171. The flexibility and extraordinary nature of supervisory writs render it extremely difficult to formulate any general rules as to when they will or will not issue. Id.
In Louisiana Associated Gen. Contractors, Inc. v. New Orleans Aviation Bd.,[1] we granted writs according to our supervisory jurisdiction under LA. CONST. ART. V, § 5(A), even though relator did not have a right of direct appeal to this court under LA. CONST. ART. V, § 5(D). There we granted writs in order to avoid further delay in the disposition of the matter which had previously been remanded to the trial court. General Contractors, p. 3, 764 So.2d at 33. Other instances of this court exercising its supervisory authority though relator had not exhausted its remedies in the lower courts include Progressive Sec. Ins. Co. v. Foster, supra, p. 2, 711 So.2d at 678 n. 3; State Bond Comm'n, supra, 510 So.2d at 663; State v. Peacock, 461 So.2d 1040, 1041 (La.1984)("since this case has already been briefed and argued in this court, judicial economy will best be served by exercising our supervisory jurisdiction"); Hainkel v. Henry, 313 So.2d 577, 578 (La.1975).
In my view, judicial economy will best be served by exercising our supervisory jurisdiction in this matter before us. Although the district court failed to include a declaration of unconstitutionality in the judgment, the extensive written reasons for judgment show that the district court denied GNOEC's petition for mandamus based upon its determination that La.Rev. Stat. 32:57(G) is unconstitutional on several grounds. This matter has been thoroughly briefed and argued before this court. Additionally, this case presents the issue of whether in a mandamus action asserting violations of ministerial duties, judges may challenge the constitutionality of the statute imposing such ministerial duty as a defense. This is a significant unresolved issue of law which should be resolved by this court, as this court has a duty to provide an authoritative voice on questions of importance to the legal system. Because of the important public interest in this matter, the length of time in which it has been pending, and in the interest of judicial economy, I believe this court should exercise its supervisory jurisdiction rather than remand this case to the court of appeal. For these reasons, I respectfully dissent.
WEIMER, J., dissenting.
I respectfully disagree with the majority's decision to remand this case to the court of appeal.
I agree we do not have appellate jurisdiction pursuant to the provisions of La. Const. art. V, § 5(D) because the judgment itself does not declare LSA-R.S. 32:57(G) unconstitutional. However, the written reasons clearly reflect the district court's determination that the statute is unconstitutional. As I have previously acknowledged, a judgment and reasons for judgment are two separate and distinct *26 documents. Becker v. Dean, 03-2493, p. 4 (La.9/18/03), 854 So.2d 864, 875 n. 5, Weimer, J., dissenting; Cenac v. Public Access Water Rights Association, 02-2660, p. 9 (La.6/27/03), 851 So.2d 1006, 1023 n. 6, Weimer, J., dissenting in part. Appeals are taken from the judgment, not the written reasons for judgment. Id.
Nevertheless, the determination that this court does not have appellate jurisdiction over this matter does not preclude the court from exercising its supervisory jurisdiction pursuant to La. Const. art. V, § 5(A) to consider the issues raised, briefed and argued extensively by the parties. As Chief Justice Calogero points out in his concurring opinion in City of Baton Rouge v. Ross, 94-0695 (La.4/28/95), 654 So.2d 1311:
"The distinction between supervisory and appellate jurisdiction [in the 1974 Constitution] is a continuation of existing terminology, `supervisory' referring to the court's discretionary jurisdiction under which it has the power to select the cases it will hear, and `appellate' contemplating cases in which a party as a matter of right can demand that the court hear a case." [Emphasis in original.]
City of Baton Rouge v. Ross, 94-0695, pp. 1-2 (La.4/28/95), 654 So.2d 1311, 1327, Calogero, Chief Justice concurring, quoting Lee Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La. L.Rev. 765, 795 (1977). By virtue of its supervisory jurisdiction, this court can hear any case that it chooses that arises in the Louisiana court system. Id. quoting State of Louisiana Constitutional Convention of 1973 Verbatim Transcripts, August 15, 1973 at 51. As we have frequently noted, "[t]he constitutional grant of supervisory authority to this court is plenary, unfettered by jurisdictional requirements, and exercisable at the complete discretion of the court." Progressive Security Insurance Company v. Foster, 97-2985 (La.4/23/98), 711 So.2d 675, 678 n. 3, quoting State Bond Com'n v. All Taxpayers, Property Owners, and Citizens of State, 510 So.2d 662, 663 (La.1987).
In the exercise of its discretion, this court has traditionally and justifiably been reluctant to exercise its supervisory jurisdiction until all mechanisms of judicial review available in lower courts are exhausted. See, State v. Wimberly, 414 So.2d 666, 670 (La.1982) (on rehearing), quoting State ex rel. City of New Orleans v. The Judge of the Sixth District Court, 32 La. Ann. 549 (La.1880). Nevertheless, under exceptional circumstances involving questions of significant public import and in the interest of judicial efficiency, this court has elected to exercise its supervisory jurisdiction to resolve issues arising in cases in which the right of direct review via appeal is not available. Louisiana Associated General Contractors, Inc. v. New Orleans Aviation Board, 99-0025 (La.7/7/99), 764 So.2d 31, 33 ("Upon review, we find that... the LAGC did not have a right of direct appeal to this court. However, we decide to grant this case according to our supervisory jurisdiction under La. Const. Art. V, § 5(A) in order to avoid further delay in the disposition of this matter."). See also, Progressive Security Insurance Company, 97-2985 at 1, 711 So.2d at 678 n. 3; State v. Jones, 94-0459 (La.7/5/94), 639 So.2d 1144, 1147; State v. Peacock, 461 So.2d 1040, 1041 (La.1984).
This case presents the exceptional circumstance warranting the exercise of our supervisory jurisdiction to resolve the issues raised now, rather than following a remand to the court of appeal and the additional delays entailed therein. Several considerations warrant this conclusion. First, this court is only deprived of appellate jurisdiction in this instance by virtue of an oversight on the part of the district court in failing to incorporate the declaration of unconstitutionality into its final *27 judgment. The extensive reasons for judgment assigned by the district court leave no doubt that the basis for the judgment denying the petition for mandamus is the court's conclusion that the provisions of LSA-R.S. 32:57(G) are constitutionally infirm. In addition, the issues raised in this case have been exhaustively briefed and argued by the parties. A remand to the court of appeal leaves that court in the unenviable position of having to determine what disposition can be made of the case in its present posture, necessitating further delay in a matter that has been pending for quite some time.[1] Finally, the threshold issue that is presented in this case requires a determination of the right or interest of a judge to challenge the constitutionality of a law imposing what is alleged to be a ministerial duty in defense of a mandamus action brought to compel the judge to perform his or her duty. This issue, which essentially tests the scope of judicial authority, is an issue of significant public interest, the final resolution of which rests particularly within the province and responsibility of this court. Thus, while the majority is to be commended for its caution and restraint, a concern in which I would ordinarily share, I believe that the efficient use of judicial resources and the significance of the underlying issue in this case justify this court's exercise of its supervisory jurisdiction pursuant to La. Const. art. V, § 5(A) to resolve this case now. Therefore, I respectfully dissent from the majority's decision to remand this case to the court of appeal.
NOTES
[1] Specifically, La. R.S. 32:57(G) provides in its entirety:

(1) Notwithstanding any provision of law to the contrary, any person who is found guilty, pleads guilty, or pleads nolo contendere to any motor vehicle offense when the citation was issued for a violation on the Huey P. Long Bridge or the Lake Pontchartrain Causeway Bridge or approaches to and from such bridges by police employed by the Greater New Orleans Expressway Commission shall pay an additional cost of five dollars.
(2) All proceeds generated by this additional cost shall be deposited into the state treasury. After compliance with the requirements of Article VII, Section 9(B) of the Constitution of Louisiana relative to the Bond Security and Redemption Fund, and prior to monies being placed in the state general fund, an amount equal to that deposited as required in this Subsection shall be credited to a special fund hereby created in the state treasury to be known as the Greater New Orleans Expressway Commission Additional Cost Fund. The monies in this fund shall be appropriated by the legislature to the Greater New Orleans Expressway Commission and shall be used by the commission to supplement the salaries of P.O.S.T. certified officers and for the acquisition or upkeep of police equipment. All unexpended and unencumbered monies in this fund at the end of the fiscal year shall remain in such fund. The monies in this fund shall be invested by the state treasurer in the same manner as monies in the state general fund and interest earned on the investment of monies shall be credited to this fund, again, following compliance with the requirements of Article VII, Section 9(B) of the Constitution, relative to the Bond Security and Redemption Fund. The monies appropriated by the legislature pursuant to this Paragraph shall not displace, replace, or supplant appropriations otherwise made from the general fund for the Greater New Orleans Expressway Commission.
[1] 99-0025 (La.7/7/99), 764 So.2d 31.
[1] If, pursuant to the consent of the parties, the matter is ultimately remanded to the trial court for modification of the judgment to conform to the written reasons, then it will once again return to this court for resolution under our appellate jurisdiction at some date in the future.