BYRNES, Judge.
The trial court granted the' defendants’ motion for summary judgment and dismissed plaintiff-appellant, Raquel Guiehard’s claim for constructive discharge based on age, race, color, or national origin, and/or religious discrimination as well as intentional and/or negligent infliction of emotional distress. Plaintiff appeals. We affirm.
On appeal plaintiff has raised only the issue of race discrimination. We, therefore, find that her claims for damages based on other forms of discrimination and intentional and negligent infliction of emotional distress have been abandoned. The defendants noted this abandonment in their brief, and the plaintiff did not controvert this in her reply brief.
In her petition plaintiff also made claims against her supervisor, Christine Lirette, individually. Those claims were also dismissed by the trial court. Plaintiff has not asserted any claims against Lirette on appeal, nor has she complained of any error in the dismissal of her claims against Lirette. The defendants noted this abandonment in their brief, and the plaintiff did not controvert this in her reply brief. Therefore, we find that plaintiff has abandoned her claims against Lirette.
The plaintiff, an Hispanic female from Cuba, worked for the defendant Sav-A-Cen-ter store as a bakery clerk from February of 1993 until January 7, 1994 at which time she resigned under conditions that she claims amounted to a constructive discharge. It is undisputed that plaintiff was never actually discharged: She quit, allegedly because she found that the discriminatory practices she encountered in the workplace made working conditions intolerable.
Normally, in order to establish a pri-ma facie case of discharge discrimination the plaintiff must show that:
1. she is a member of a protected class;
2. she was discharged, either actually or constructively;
3. she was qualified to perform the job; and
4. she was replaced by a person outside the protected group.
Plummer v. Marriott Corp., 94-2025 (La.App. 4 Cir.1995), 654 So.2d 843; writ denied 95-1321 (La.9/15/95), 660 So.2d 460.
Constructive discharge is difficult to prove. It is even more difficult to prove when the plaintiff who alleges discriminatory constructive discharge was replaced by a member of the same protected class. In this case the defendants have introduced uncontroverted evidence that the plaintiff was replaced by a member of the same protected class.
In order to prove constructive discharge, the plaintiff must prove that the defendants created such intolerable working conditions that she was forced to involuntarily resign and that this intolerability resulted from acts of discrimination. Ugalde v. W.A. McKenzie Asphalt Co., 990 F.2d 239, 242 (5 Cir.1993); Boze v. Branstetter, 912 F.2d 801, 804-05 (5 Cir.1990).
When the plaintiff was deposed she stated that in her opinion her supervisor Lirette was nicer and fairer to other workers, but she couldn’t remember who the other workers were. When asked whether anybody at Sav-A-Center ever mentioned her color, the plaintiff could not recall. Plaintiff complained about being asked to work on certain days, but on her employment application she had indicated that she was available for work on any day, “12 noon—6 pm.”
The plaintiff complains that she was given a written reprimand (“Correction Action Notice”) which stated that she had left her post prior to completing a list of assigned tasks. The plaintiff disputes this finding. Regardless, we note that it was only a reprimand, and not, even when cumulated with other specific allegations, sufficient to constitute a constructive discharge. There is nothing unprofessional, scurrilous or obscene in the reprimand language. The only fault plaintiff can find with the reprimand is that she contends that she completed all of her *1015 assigned tasks contrary to what is stated in the reprimand. Even if we accept the plaintiff’s story as true for purposes of argument, this incident is not sufficient to constitute a constructive discharge.
The other major complaint that the plaintiff makes is that her employer, the defendant, refused to discuss the matter with the plaintiff’s daughter. The plaintiff alleges that she wanted her daughter involved because her daughter was more proficient in English than is the plaintiff. The refusal of the defendant through its employee agents to discuss the matter with the plaintiff’s daughter is an internal company matter and not the proper concern of this Court. The defendant’s refusal to discuss plaintiff’s employment with the plaintiff’s daughter is not an actionable decision. And the daughter’s testimony on the question of discrimination against her mother would be worthless as there is no indication that the daughter has any first hand knowledge of the matter.
The record also contains a copy of the defendant’s “Equal Employment Opportunity Policy” and the defendant’s “Internal Complaint Procedure.” It is undisputed that the plaintiff did not attempt to follow the internal complaint procedure. Instead she decided abruptly to quit.
In summary, what we have is:
1. A plaintiff who has quit voluntarily.
2. A plaintiff who failed to follow corporate procedures for the redress of grievances.
3. A plaintiff who was replaced by a member of the same protected class.
4. A plaintiff whose case is based largely on unsubstantiated and vague general references to discrimination.
5. A plaintiff whose only specific allegations, such as her disagreement about the substance of her written reprimand, and the refusal by the defendant’s employee agents to discuss the plaintiff’s employment with the plaintiff’s daughter, are insufficient to suggest that she has a serious claim.
Thus the defendant has succeeded in showing that there is no genuine issue of material fact, thereby shifting the burden to the plaintiff under the summary judgment law as it existed prior to the enactment of Act 483 of 1997. The burden is then on the plaintiff to show the existence of a genuine issue of material fact. The plaintiff may not satisfy this burden by resting on mere allegations or by filing Self-serving conclusory affidavits which merely restate those allegations. The mere fact that the plaintiff contests a fact in her allegations is not sufficient to raise a genuine issue concerning those facts.
As this Court finds that summary judgment was proper under the law as it existed prior to the enactment of Act 483 of 1997, Act 483 of 1997 which favors summary judgment even more strongly would only serve to reinforce this conclusion, as the plaintiff has clearly failed to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial.
Finally, plaintiff argues that a favorable decision of an administrative law judge should be given res judicata effect, or great weight at the very least. However, the plaintiff acknowledges that she failed to offer the decision of the administrative law judge to the trial court. Plaintiff argues that this Court should correct this omission pursuant to Guilbeau v. Jeanerette Lumber & Shingle Co., 214 So.2d 392 (La.App. 3 Cir.1968). But Guilbeau dealt with the omission from the appellate record of “certain exhibits introduced in evidence” in the trial court. Id. at 393. In the instant case the exhibit plaintiff wishes this Court to consider was never introduced to the trial court. LSA-C.C.P. art. 2132 is designed to correct the record on appeal when it does not accurately reflect the trial court record. LSA-C.C.P. art. 2132 was not intended to permit litigants to correct errors made in the trial court that are accurately reflected by the appellate record.
In Jackson v. Wal Mart Properties, Inc., 443 So.2d 3, 4 (La.App. 3 Cir.1983), the court stated that:
According to Article 2132 of the Louisiana Code of Civil Procedure, after the record has been transmitted to the appellate court, the record can be supplemented by stipulation of the parties, by the trial *1016 court or by order of the appellate court only if the evidence was actually introduced at trial. [Emphasis added.]
The Jackson court remanded to the trial court for the admission of the additional evidence, but only because “both plaintiff and defendant request that the lien be admitted.” It is significant that in Jackson the appellate court did not feel that it had the authority to supplement the record at the appellate level with evidence that had not been introduced at trial, even at the request of both parties. And it was only in response to the request of both parties that the Jackson court took the exceptional step of remanding to the trial court for the admission of additional evidence. In the instant case the defendants vigorously oppose the admission of the findings of the administrative law judge. Therefore, Jackson provides no assistance to the plaintiff.
In remanding, the Jackson court relied on the authority of LSA-C.C.P. art. 2164 and Jones v. LeDay, 373 So.2d 787 (La.App. 3 Cir.1979). In Jones the court contemplated a remand for the purpose of allowing the introduction of newly discovered evidence and suggested that the appellate court had the authority to do so, but must exercise such authority sparingly — so sparingly, in fact, that the LeDay court refused to remand. Nothing in LeDay suggests that the equitable powers to do justice conferred on this Court by LSA-C.C.P. art. 2164 should be extended to allow for the admission of additional evidence that is not newly discovered. We also note that a literal reading of LSA-C.C.P. art. 2164 would limit its application to what is “proper on the record on appeal.” [Emphasis added.]
|7It is too late for the plaintiff to offer the opinion of the administrative law judge into evidence.
For the foregoing reasons the decision of the trial court is affirmed.

AFFIRMED.