JOY COSSICH LOBRANO, Judge.
|, This is a legal malpractice ease, in which plaintiff/appellant, Carlos Hardison (“Hardison”), appeals the November 18, 2014 judgment of the district court, which granted summary judgment in favor of defendants/appellees, George W. Byrne, Jr. and Ungar & Byrne, A Professional Law Corporation (collectively “Byrne”).
This appeal arises from Byrne’s legal representation of Hardison in a maritime personal injury claim (the “maritime case”). On' August 18, 2011, Hardison, through his then attorney, Byrne, filed a seaman’s complaint in the United States District Court for the Eastern District of Louisiana against his employer, Abdon Calíais Offshore, LLC (“ACO” or the “employer”), alleging Jones Act negligence, unseaworthiness, and entitlement to maintenance and cure. Hardison alleged that, on June 19, 2011, while working for ACO, he cut his foot when stepping down from a bunk bed onto a milk crate, the only apparent manner of ingress and egress to the bed. He asserted that the employer withheld medical 12care and that the delay in medical care" resulted in the partial amputation of Hardison’s leg weeks later.
As pretrial discovery progressed in the maritime case, ACO learned that Hardison had preexisting diabetes, for which he had ceased treatment for several years. Har-dison did not disclose his diabetic condition to ACO at the time of hire. ACO raised a McCorpen[1] defense in "a motion for partial summary judgment, which the federal court granted, barring Hardison’s entitlement to maintenance and cure for concealing the preexisting condition. The federal court did not order Hardison to pay restitution • of maintenance and cure he had already received from ACO..
Hardison’s Jones Act and unseaworthiness claims were not dismissed via summary judgment and remained set for trial. Next, a settlement was reached in the amount of $90,000.00. A hearing to confirm the settlement went forward on August 14, 2012, in which Hardison participated by telephone and was questioned by the federal judge, to ascertain whether Hardison understood the terms and effect of the settlement. The federal judge’s colloquy with Hardison was as follows:
THE COURT: ... Mr. Hardison, you heard a whole lot of legal mumbo jumbo, but at the end of the day, sir, do you understand that by signing this release, signing this • check that you are completely exonerating or completely releasing the defendants from any further -Ispayments that are caused, in your opinion, by any medical condition that you suffer as a result of this accident which forms the basis of this lawsuit. Do you understand that, sir? ■
MR. HARDISON: Yes, sir.
THE COURT: Okay. That at the end of the day, after you sign this, now — and this check for [$]90,000 is what’s called a gross amount. Your lawyer will take out of that, not any medical bills, because he’s not paying any medical bills out of this settlement, because he doesn’t have to, and I’m telling you that if anybody seeks embracement [sic] to you for your medical treatment that it *1113 would be your responsibility to pay it, but you have not been awarded any money by way of or given any money by way of this settlement which would include payment of those medical bills, do you understand that, sir?
MR. HARDISON: Yes, sir.
THE COURT: All right, sir. And the gross amount of $90,000, of course, your lawyer will take his fee and any other expenses that are associated with his representation of you that would be taken, and then, of course, you’ll get the net amount whatever is left over. You understand that, sir?
MR. HARDISON: Yes, sir.
THE COURT: All right, sir. Do you have any questions whatsoever that you would like, not to ask your lawyer, because that’s private between you and your lawyer at this point. You can certainly ask him any questions that you want in private.
Do you have any questions of Mr. Galloway, who’s a defense lawyer[?]
MR. HARDISON: No, sir.
THE COURT: Do you have any questions of me?
MR. HARDISON: No, sir.
THE COURT: So you understand, this is a full and final settlement, and I am today authorizing that the case be dismissed. Do you understand that?
MR. HARDISON: Yes, sir.
14After the settlement proceedings, Har-dison consulted a new attorney and refused to sign the settlement documents or accept the settlement funds. Hardison terminated Byrne as his attorney. On October 4, 2012, ACO filed a motion to enforce settlement. On November 7, 2012, the federal court granted the, .motion, and op December 18, 2013 the order enforcing settlement was affirmed by the U.S. Fifth Circuit Court of Appeals, which found the settlement of the maritime case valid and enforceable.
On August 12, 2013, Hardison filed a petition for damages in the Civil District Court for the Parish of Orleans alleging legal malpractice by Byrne, (the “malpractice case”). Hardison alleged that Byrne was negligent in undervaluing, his maritime case, not properly representing Hardison on the McCorpen defense, not asserting appropriate legal and factual arguments, and not obtaining Hardison’s consent to settle the maritime case. Hardison contended that the maritime case was worth between $3 and $10 million, and that the alleged negligence resulted in damages and loss of opportunity.
On August 21, 2014, Byrne filed a motion for summary judgment seeking dismissal of the malpractice case. Byrne argued that, to state a cause of action for legal malpractice, Hardison must prove that: (1) there was an attorney-client relationship; (2) the attorney was negligent (“negligent representation”); and (3) that the negligence caused Hardison some loss (“loss causation”). Byrne contended that Hardison could not meet his burden of proving the third essential element of | slegal malpractice, loss causation.[2] In support of his motion, Byrne introduced several exhibits from the record of the maritime case, which included, in relevant part, the order granting partial summary judgment in favor of ACO on the McCor-pen' defense, ACO’s motion to enforce set *1114 tlement with exhibits, and the U.S. Fifth Circuit opinion affirming the federal court’s order enforcing settlement. The transcript of the August 14, 2012 settlement hearing was appended as an exhibit to the motion to enforce settlement.
Hardison filed a memorandum in opposition to summary judgment, in which he claimed that numerous factual disputes exist concerning whether Byrne settled the maritime case without Hardison’s consent, whether Byrne failed to inform Hardison that the telephonic hearing before the federal judge was to finalize the settlement with ACO, and whether Hardison was under duress to agree to settlement. Hardi-son argued that these disputes are genuine issues of material fact, which should preclude summary judgment. In support of his memorandum, Hardison introduced an affidavit, in which he attested, in relevant part, to the following:
That it is his belief that Mr. George Byrne did not represent him properly against Abdon Calíais.
[[Image here]]
That Carlos Hardison believes Mr. George Byrnes [sic], his former attorney had a conflict of interest in his representation of Hardison in this case.
[[Image here]]
IfiMr. Byrne never informed Carlos that the August 24, 2012[3] [settlement hearing was to finalize the $90,000 settlement with Abdon.
Carlos believed that when [the federal court judge] Judge Zainey said: “By signing this release, signing this check, you are completely exonerating and releasing defendants from any further payments that are caused, in your opinion, by any medical conditions that you suffer as a result of this accident which forms the basis of this lawsuit.” Carlos believes that he had to sign the settlement documents and check to finalize the settlement with Abdon.
[[Image here]]
When Carlos finally signed the settlement documents and the check, he was under duress and pressure because a court order said he had to.
Carlos never wanted or agreed to settle his case for $90,000 against Abdon.
In the remainder of the affidavit, Hardi-son attested to his account of the maritime accident, ensuing events by which his medical treatment .was delayed, complaints of pain, and the circumstances by which Byrne came to represent Hardison in the maritime case.
On November 18, 2014, the lower court granted summary judgment in favor of Byrne, finding that there was no genuine issue of material fact as to the second and third essential elements of legal malpractice, respectively, negligent representation and loss causation. The lower court stated in its reasons for judgment[4],[5] that the *1115 affidavit introduced by Hardison in opposition to summary | judgment was “self-serving” and contained conclusory allegations insufficient to meet Hardison’s burden of proof.
Hardison appeals the district court’s judgment. On appeal, Hardison argues that the district court erred in granting summary judgment to Byrne and raises two assignments of error, as follows:
1. The trial court erred in making the credibility determination that Hardi-son’s affidavit was “self-serving,” and did not create a genuine issue of material fact sufficient to defeat Byrne’s motion for summary judgment.
2. The trial court erred in granting Byrne’s motion for summary judgment because genuine issues of material fact remain which must be resolved by a trial on the merits.
“A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate; ie. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.” Samaha v. Rau, 2007-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83.
A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled’to judgment as a matter of law.” La. C.C.P. art. 966(B). “The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action ... The procedure is favored and shall be construed to accomplish these ends.” La. C.O.P. art. 966(A)(2).
IsAs to -the burden of proof on a motion for summary judgment, La. C.O.P. art. 966(C)(2) provides:
■The burden of proof remáins with the movant. ..However, if the, movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s-burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an- absence of factual support for one or more elements 'essential to the adverse party’s claim, action, dr defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
The Louisiana Supreme Court explained the summary judgment procedure as follows:
[The summary judgment procedure] first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. At that point, the party who bears the burden of persuasion, at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or, she will be able to meet the burden at trial ... Once the motion for summary .judgment has been properly -supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion.
*1116 Reynolds v. Bordelon, 2014-2371, pp. 3-4 (La.6/30/15), 172 So.3d 607, 611 (emphasis added).
A trial judge cannot make credibility determinations on a motion for summary judgment. Hutchinson v. Knights of Columbus, Council No. 5747, 2003-1533, p. 8 (La.2/20/04), 866 So.2d 228, 234. A party seeking a summary judgment is entitled to a favorable judgment only if'“there is no genuine issue as to a material fact” and, thus-, the “mover is entitled to judgment as a- matter of law.” La. |9C.C.P. art. 966(B). The credibility of a witness is a question of fact. Hutchinson, 2003-1533, p. 8, 866 So.2d at 234. In deciding a motion for summary judgment, the court must assume that all of the affiants are credible. Id.
We now address each assignment of error individually.
First, Hardison argues that the lower court erred in finding that Hardi-son’s affidavit was- self-serving.' He contends that'by characterizing the affidavit as self-serving, the lower court made a determination as to Hardison’s credibility, which is impermissible on summary judgment.
This Court has held that an inconsistent affidavit offered only after the motion for summary judgment was filed is not sufficient to create a genuine issue of material fact where no justification for the inconsistency is offered. George v. Dover Elevator Co., 2002-0821, p. 4 (La.App, 4 Cir. 9/25/02), 828 So.2d 1194, 1197. Additionally; where the defendant has succeeded on his initial burden in showing that there is no genuine issue of material fact, thereby shifting the 'burden to the plaintiff, this Court has stated:
■ The plaintiff may not satisfy this burden by resting on mere allegations or by filing self-serving conclusory affidavits which merely restate those allegations. The mere fact that the plaintiff contests a fact in her allegations is not sufficient to raise a genuine issue concerning those facts.- ■
Sims-Gale v. Cox Commc’ns of New Orleans, 2004-0952, p. 5 (La.App. 4 Cir. 4/20/05), 905 So.2d 311, 314, quoting Guichard v. Super Fresh/Sav-A-Center, Inc., 97-1573, pp. 4-5 (La.App. 4 Cir. 2/4/98), 707 So.2d 1013, 1015.
ImHardison cites to a Louisiana First Circuit case, Claitor v. Brooks, 2013-0178 (La.App. 1 Cir. 12/27/13), 137 So.3d 638, wherein the court upheld summary judgment in favor of a defendant, over the objections of a plaintiff who contended that the affidavit submitted by the defendant was self-serving. We do not read Claitor to hold that a court’s finding that an affidavit is self-serving is the same as á finding which determines the affiant’s credibility. Hardison cites to no case, and we find none, that holds that a judge makes a credibility determination merely by deeming an affidavit self-serving. Moreover, we find this case distinguishable as the court in Claitor did not find any significant discrepancy between the defendant’s affidavit and prior deposition testimony,
Here, Hardison submits an affidavit attesting that he did not agree to settlement in the maritime case. However, in his colloquy with the federal judge during the settlement proceedings, Hardison answered in the affirmative to numerous questions regarding his agreement to. settlement and understanding of the effects of settlement. . These attestations are inconsistent statements made in a post-motion-for-summaiy-judgment affidavit, which,are insufficient to meet Hardison’s burden of proof to establish the existence of genuine issues of material fact.
Similarly, Hardison states in his affidavit that he-was under duress to sign settlement documents and accept the settlement funds because the federal court ordered *1117 him to do so. . However,, the record , reflects only that the federal court granted the motion to enforce settlement after Hardison had agreed to' settlement |nand after the federal judge .was satisfied, through questioning on .the recprd, that Hardison understood the terms of that settlement. As such, Hardison’s attestation that he was under duress is a mere conclusion of law, which likewise lacks the factual support to meet his requisite burden of proof. ■
‘Accordingly, we do not find that the lower court evaluated Hardison’s credibility by finding that his affidavit was self-serving. We do not find in the record before us that the lower court made any evaluation of credibility in deciding summary judgment. This assignment of error lacks merit.
Second, Hardison argues that the district court erred in granting Byrne’s motion for summary judgment1 as genuine issues of material fact remain, which require trial on the merits. ■
For a valid legal malpractice claim, the plaintiff must prove: “1) the existence of an attorney-client relationship; 2) negligent representation by! the attorney; and 3) loss caused by that negligence.” Saussy v. Bonin, 2012-1755, p. 6 (La.App. 4 Cir. 9/4/13), 125 So.3d 1, 5, citing Costello v. Hardy, 2003-1146, p. 9 (La.1/21/04), 864 So.2d 129, 138. The plaintiff bears the burden of proving each of these elements. Id. A plaintiff can have no greater rights against attorneys for the negligent handling of a claim than are available in the underlying claim. Costello, 2003-1146, pp. 9-10, 864 So.2d at 138, citing Spellman v. Bizal, 99-0723, p. 11 (La.App. 4 Cir. 3/1/00), 755 So.2d 1013, 1019.
hgHere, Byrne moved for summary judgment on the basis of the third element of legal malpractice, loss causation. The lower court determined that Hardison could not establish either the second element (negligent representation) or third element (loss causation) of a cause of action for legal malpractice, and summary judgment was granted.
On our de novo review, we find that Byrne established that summary judgment was proper as to the third element of Hardison’s legal malpractice claim, loss causation.
Hardison asserts in his petition for damages that, as a consequence of Byrne’s alleged negligence in legal representation and subsequent settlement of the maritime claim, he was deprived of a chance at collecting damages at a jury trial for pain and suffering, mental anguish, medical bills, loss of quality of life, loss of enjoyment of life, lost wages, .disfigurement, and punitive damages, and that Byrne settled the maritime ease “without Hardison’s knowledge” for $90,000.00 while the maritime case was allegedly worth between $3 and $10 million.
In support of the motion for summary judgment, Byrne produced a transcript of the settlement colloquy with the federal judge, in which Hardison assented to numerous questions from the federal judge regarding his understanding of the settlement and‘was given the opportunity to ask questions of the judge and ACO’s counsel regarding settlement. Byrne further introduced the federal district court order enforcing the settlement and the U.S. Fifth Circuit opinion affirming the validity of the settlement. In addition, Byrne submitted the federal 'court order | ^granting ACO’s motion for summary judgment, which barred Hardison’s claim for maintenance and cure. Through- these documents, ■ Byrne established that Hardison was precluded as a matter of law from recovering' maintenance and cure in the maritime case and that he instead recovered $90,000.00 in gross through a valid, *1118 voluntary settlement.' At this point in the proceedings, the burden shifted to Hardi-son to produce factual support sufficient to establish that he will be'able to satisfy his evidentiary burden of proving damages or loss sustained as a result of Byrne’s alleged malpractice.
We find that Hardison failed to produce any factual support for his damage claim. No evidence of mental anguish, medical bills, or lost wages was offered. As to other damages, Hardison introduced his affidavit in which he merely attested that' he was injured, that his supervisor-captain delayed five days in completing an accident report, that he was not taken to see a medical provider for eight days following the accident and only then saw'a physician’s assistant, that he was in pain throughout this period, that his erhployer never arranged a referral to a physician or podiatrist, and that he saw a physician for the first time fourteen days after the accident when family members took him to the hospital. He argues that all of these attestations are “genuine issues of material fact” which should . preclude summary judgment.. . We disagree. , Even taking all of these attestations as true,-the affidavit does not set forth any Tacts supporting a specific loss claimed by Hardison as a result of Byrne’s representation and settlement.
| uHardison also contends on appeal that Byrne was negligent in “failing to overcome the McCorpen defense despite having the evidence to do so,” and that as a result, Hardison was “forced to mitigate his damages” by settling for the “reduced value of the case.” ' Hardison fails to explain with any evidence what his damages were and how any alleged negligence by Byrne caused those damages.[6] Further, no evidence was introduced that Hardison would not have settled but for the negligent handling of the McCorpen defense.
The Louisiana Supreme Court holds that an essential element of a legal malpractice action is establishing that there is “some causal connection between the alleged negligence and the eventual unfavorable outcome of the litigation.” MB Indus., LLC v. CNA Ins. Co., 2011-0303; 0304, p. 20 (La.10/25/11), 74 So.3d 1173, 1187. Hardison did not offer any evidence to show that the settlement was an “unfavorable outcome of the litigation.” Therefore, Hardison failed to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial as to a loss caused by the alleged legal, malpractice of Byrne. Accordingly, we find that no genuine issues of material fact exist as to Hardison’s alleged loss, which is an essential element for a valid legal malpractice action.
_J^For all of these reasons, we affirm the judgment of the district court, which granted summary judgment in favor of Byrne.
AFFIRMED.

. Under McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 548 (5th Cir.1968), an injured seaman is not entitled to maintenance and cure where he knowingly or fraudulently conceals his preexisting illness from his employer and there is a causal link between the preexisting disability that was concealed and the disability incurred during the voyage. See also Meche v. Doucet, 777 F.3d 237, 244-45 (5th Cir.2015) (‘‘In order to establish a McCorpen defense, an employer must show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit.”)

. Byrne also claimed that Hardison is es-topped from claiming malpractice because he voluntarily settled his claims against his employer. The lower court rejected this argument, finding that the court must determine, as a threshold issue, whether a reasonably prudent party would have settled-given the facts known at the time. See Saussy v. Bonin, 2012-1755, p. 4 (La.App. 4 Cir. 9/4/13), 125 So.3d 1, 4, citing MB Indus., LLC v. CNA Ins. Co., 2011-0303; 0304, p. 10 (La.10/25/11), 74 So.3d 1173, 1181. This issue is not contested as part of this appeal.

. The transcript of the settlement proceedings shows that the hearing took place on August 14, 2012.

. The judgment and reasons for judgment were included in the same document, contrary to the mandate of La. C.C.P. article 1918, which states, in pertinent part: "When written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment.” An appeal lies only from the judgment, not from the reasons. I.F. v. Administrators of the Tulane Educational Fund, 2013-0696, p. 6 (La.App. 4 Cir. 12/23/13), 131 So.3d 491, 496, citing Greater New Orleans Expressway Com'n v. Olivier, 2002-2795, p. 3 (La.11/18/03), 860 So.2d 22, 24. This error does not invalidate a judgment that is complete and valid except for the inclusion of reasons. Id.

.We further note that the judgment lacks any language dismissing the malpractice case, with or without prejudice. Nevertheless, as this is a final judgment pursuant to La. C.C.P. art. 1915, the judgment is reviewable on appeal by this Court.

. Hardison also cites to numerous Louisiana cases resulting in damage awards ranging between $500,000.00 and $2.5 million for injuries involving leg amputations. See Cooper v. Pub. Belt R.R., 2003-2116 (La.App. 4 Cir. 10/6/04), 886 So.2d 531; Johnson v. Lee, 2010-439 (La.App. 5 Cir. 11/23/10), 54 So.3d 704; Mendoza v. Mashburn, 99-499 (La.App. 5 Cir. 11/10/99), 747 So.2d 1159; Williams v. Jefferson Par. Hosp. Serv. Dist. No. 2, 604 So.2d 1046 (La.App. 5 Cir.1992). However, none of these cases is maritime in'nature, and neither a preexisting diabetic condition nor a McCorpen defense was at issue. We do not find these cases to offer guidance in this appeal or to raise any genuine issue of material fact as to whether Hardison can establish at trial a loss caused by the alleged malpractice.