RUBEN E. WILLIAMS       *       NO. 2023-CA-0180

VERSUS       *

      COURT OF APPEAL

TOURO INFIRMARY, A NON-       *
PROFIT CORPORATION       FOURTH CIRCUIT

      *

      STATE OF LOUISIANA

      * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-05778, DIVISION "A"
Honorable Ellen M. Hazeur, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Dale N. Atkins, Judge Nakisha Ervin-Knott)

Gerald Wasserman
GERALD D. WASSERMAN, LLC
3939 North Causeway Boulevard
Suite 200
Metairie, LA 70002

      COUNSEL FOR PLAINTIFF/APPELLANT

Richard S. Crisler
L. David Adams
BRADLEY MURCHISON KELLY & SHEA, LLC
1100 Poydras Street
Energy Centre, Suite 2700
New Orleans, LA 70163

      COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**DECEMBER 20, 2023**

This is a civil action. Appellant, Ruben E. Williams ("Mr. Williams"), appeals the district court's January 4, 2023 judgment, which granted Appellee, Touro Infirmary's ("Touro") motion for summary judgment, dismissing Mr. Williams' claims with prejudice. The district court found that Mr. Williams had not presented any genuine issue of material fact related to Touro's liability for his injuries, which were allegedly sustained when Mr. Williams fell while attempting to sit in a wheeled chair located in Touro's waiting room. For the reasons that follow, we affirm the district court's judgment.

**PROCEDURAL AND FACTUAL HISTORY**

Mr. Williams filed a petition for damages on July 8, 2021, in which he named Touro as the sole defendant. In his petition, Mr. Williams alleged that on September 16, 2020, he presented at Touro to receive his first radiation treatment for prostate cancer.[1] After checking in at the front desk of the radiation oncology

---

[1] There is a discrepancy as to the date Mr. Williams presented at Touro for radiation treatment. While Mr. Williams alleges he arrived for treatment on September 16, 2020, Touro contends he was there on September 14, 2020. However, because neither date implicates an issue of prescription and the discrepancy has no bearing on our conclusion in the case *sub judice*, we pretermit any further discussion of these dates. We would note that each party presented copies of medical records to support their assertions of the correct date—however, as the district court

department, Mr. Williams alleged that he attempted to have a seat in the waiting area; however, when he endeavored to lower himself into a chair located approximately three to five feet away from the wall, the chair suddenly and without warning rolled backwards, causing him to fall to the ground and suffer injuries to his shoulders, hands and hip.

On September 20, 2021, Mr. Williams filed his first supplemental and amending petition in order to clarify that he was in the waiting room at the time of his fall and that the alleged injuries were not sustained during the course of medical treatment. Touro filed an answer on September 20, 2021, in which it asserted, *inter alia*, the affirmative defense that any injuries or damages that Mr. Williams might have suffered were due to an open and obvious condition, and also sought to invoke the qualified immunity afforded to health care providers during a declared state of public health emergency,[2] codified under La. R.S.

---

noted at the summary judgment hearing, Mr. Williams failed to attach those records, labeled as Exhibit C, to his opposition to Touro's motion for summary judgment; therefore, these records were not properly entered into evidence and are not appropriately before this Court. Additionally, the medical records proffered by Touro were attached to its reply memorandum in support of its motion for summary judgment, which is expressly prohibited under La. C.C.P. art. 966(B)(3), which provides, in pertinent part, that "[n]o additional documents may be filed with the reply memorandum." Moreover, neither of these records were certified as required by La. C.C.P. art. 966(A)(4)(a): "The only documents that may be filed or referenced in support of or in opposition to the motion are . . . certified medical records . . . ." *See also* La. R.S. 13:3714 (providing that in order for medical records to be certified they must be "signed by the administrator or the medical records librarian of the hospital in question . . . or attested to by the state health care provider or the private health care provider. . . .")

[2] On March 11, 2020, under the powers granted by the Louisiana Health Emergency Powers Act, Governor John Bel Edwards declared a state of public health emergency due to the potential for the rapid spread of COVID-19 throughout the State. This was accomplished via Proclamation Number 25 JBE 2020, which declared that "[p]ursuant to the Louisiana Health Emergency Powers Act, La. R.S. 29:760, et seq., a statewide public health emergency is declared to exist in the State of Louisiana as a result of the imminent threat posed to Louisiana citizens by COVID-19, which has created emergency conditions that threaten the lives and health of the citizens of the State." This emergency declaration was renewed on a monthly basis until it was allowed to expire on March 16, 2022.

2

29:771(B)(2)(c). At the time of Mr. Williams' alleged injuries, this statute provided that "[d]uring a state of public health emergency, any health care providers shall not be civilly liable for causing the death of, or, injury to, any person or damage to any property except in the event of gross negligence or willful misconduct."[3]

Nearly one year later, on August 16, 2022, Touro filed a motion for summary judgment. Touro asserted in this motion that no genuine issue of material fact existed because Mr. Williams could not prove that his alleged injuries were caused by Touro's gross negligence or willful misconduct. Touro further asserted that Mr. Williams would be unable to carry his burden at trial, even under a general negligence standard, because he could not demonstrate that the chair presented an unreasonable risk of harm or that Touro had actual or constructive knowledge of its defective condition.

Mr. Williams then filed a second supplemental and amending petition on September 23, 2022, in which he challenged whether La. R.S. 29:771 is constitutional as applied to the facts of this case. According to Mr. Williams, the statute is overbroad because it shields health care providers from liability during a declared state of public health emergency irrespective of whether their actions or treatment were in any way related to the public health emergency. Further, Mr.

---

[3] Louisiana Revised Statutes 29:771 was amended via Acts 2020, 2nd Ex. Sess., No. 30, § 1, eff. Oct. 28, 2020, in which La. R.S. 29:771(B)(2)(c) was re-designated as La. R.S. 29:771(B)(2)(c)(i). The language of the statute was also slightly modified for clarity, and now provides that "[d]uring a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct."

Williams alleged that Touro was negligent and/or grossly negligent when it placed a chair with wheels in a hospital waiting room without posting any warning signs, and that the design of the chair did not make it cognizable as an open and obvious hazard.

Following, on October 28, 2022, Mr. Williams filed an opposition to Touro's motion for summary judgment.[4] In this pleading, as one of his main arguments, Mr. Williams denied the veracity of the sequence of events as recounted in the affidavit of Janice Hatt ("Ms. Hatt"), an administrative assistant at Touro who worked at the front desk of the radiation oncology department. Ms. Hatt verified that the three photographs that Touro attached to its motion for summary judgment depicted the chair in question, and that the pictures accurately reflected that the chair was placed in the corner of the room, rather than three to five feet away from the wall as Mr. Williams alleged in his petition. Ms. Hatt further averred that the chair had been in this same location since approximately 2011 and that she was unaware of any prior reports of injuries associated with this chair. Mr. Williams countered in his opposition that the chair depicted in the photograph was not the same one involved in his alleged injuries and that the chair was positioned one-and-a-half feet from the wall on the day in question, not in the corner.

---

[4] Attached to Touro's motion for summary judgment were: Exhibit A - a copy of Proclamation No. 25 JBE 2020, declaring a state of public health emergency due to Covid-19; Exhibit B - Proclamation No. 18 JBE 2022, extending the declared state of public health emergency due to Covid-19; Exhibit C - Mr. Williams' in forma pauperis petition for damages; Exhibit D - Mr. Williams' answer to interrogatories and response for request of production of documents; Exhibit E - Ms. Hatt's affidavit; and Exhibit E-1 - three photographs of the wheeled chair and its position in Touro's waiting room. Mr. Williams did not object to any of the proffered exhibits.

Touro timely filed a reply memorandum in support of its motion for summary judgment on November 8, 2022. In accordance with La. C.C.P. art. 966(D)(2),[5] Touro raised objections to some of the attachments included with Mr. Williams' opposition to its motion for summary judgment. Namely, Touro objected to: (1) the affidavit of Mr. Williams, labeled as Exhibit A; (2) two photographs purportedly depicting the Touro waiting room chair, labeled as Affidavit #1 and Affidavit #2;[6] and (3) the certified mail return and letter to the Attorney General, labeled as Exhibit D.[7] However, Touro argued that even if the exhibits were considered by the district court, it had pointed out sufficient facts to demonstrate that Mr. Williams would be unable to meet his evidentiary burden at trial; therefore, summary judgment in favor of Touro was appropriate. Moreover, Touro asserted that in the event that Mr. Williams was able to survive the summary judgment phase based upon the general negligence standards for premises liability found in La. C.C. art. 2317.1,[8] because the alleged injuries occurred during a declared state of public health emergency, Mr. Williams could not prove that Touro was grossly negligent under the heightened standard of qualified immunity provided for under the Louisiana Health Emergency Powers Act (the "LHEPA).

_____

[5] Louisiana Code of Civil Procedure article 966(D)(2) provides:

> The court shall consider only those documents filed or referenced in support of or in opposition to the motion for summary judgment but shall not consider any document that is excluded pursuant to a timely filed objection. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing whether the court sustains or overrules the objections raised.

[6] Our review of the record could locate only one photograph of a chair attached to Mr. Williams' opposition to Touro's motion for summary judgment.

[7] Mr. Williams also attached Exhibit B, some of his medical records, and Exhibit C, some discovery responses—Touro raised no objection to either of these exhibits.

[8] Louisiana Civil Code article 2317.1 will be discussed more fully *infra*.

5

The district court conducted a hearing on Touro's motion for summary judgment on November 18, 2022. After brief argument by Touro's counsel on the admissibility of Mr. Williams' exhibits, the district court ruled that Mr. Williams' affidavit, along with the attached photographs, was admissible, but that the certified mail return and letter to the Attorney General were not proper summary judgment evidence and were therefore excluded.[9] The district court granted Touro's motion for summary judgment. This timely appeal followed.

**STANDARD OF REVIEW**

"It is well-settled law that '[t]his Court reviews the granting of '[a] summary judgment on appeal *de novo*, using the same criteria that govern the [district] court's determination of whether summary judgment is appropriate.'" *Sebble on Behalf of Est. of Brown v. St. Luke's #2, LLC*, 22-0620, p. 4 (La. App. 4 Cir. 3/6/23), 358 So.3d 1030, 1034 (quoting *Johnson v. Palazzo*, 22-0502, p. 3 (La. App. 4 Cir. 12/7/22), 353 So.3d 1022, 1023). "Generally, on a motion for summary judgment, the burden of proof remains with the mover." *Everett v. Air Prods. & Chems., Inc.*, 22-0539, p. 6 (La. App. 4 Cir. 5/2/23), ___ So.3d ____, ____, 2023 WL 3193154 at * 3 (quoting *Cooper v. Brisco*, 22-0196, p. 4 (La. App. 4 Cir. 10/18/22), 366 So.3d 552, 555). "But, if the moving party will not bear the burden of proof on the issue at trial and identifies an absence of factual support for

---

[9] At the time Mr. Williams' opposition was filed, La. C.C.P. art. 966(A)(4) set forth the exclusive list of documents that could be attached in support of or in opposition to a motion for summary judgment. It provided, in pertinent part, that "[t]he only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." The article was amended via Acts 2023, No. 368, § 1, eff. Aug. 1, 2023, wherein article 966(A)(4) was re-designated as La. C.C.P. art. 966(A)(4)(a), and now provides a more expansive list of permissible summary judgment attachments: "The only documents that may be filed or referenced in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions."

one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to counter that assertion and establish that he will be able to satisfy his evidentiary burden of proof at trial." *Cooper*, 22-0196, p. 4, 366 So.3d at 555 (citing La. C.C.P. art. 966(D)(1)). "However, if the opponent of the motion cannot do so, there is no genuine issue of material fact and summary judgment will be granted." *Id.* at pp.4-5, 366So.3d at 556 (quoting *Ely Edwards Enters., Inc. v. Pontchartrain Park CDC Real Estate Holdings, LLC*, 21-0623, pp. 5-6 (La. App. 4 Cir. 4/13/22), 338 So.3d 50, 53).

## DISCUSSION

Mr. Williams presents ten assignments of error,[10] which we find can be succinctly summarized into three salient issues for this Court to consider: (1)

---

[10] Specifically, Mr. Williams asserted that:

(1) The trial court erred in granting the Motion for Summary Judgment when defendant's supporting Affidavit was signed by someone who did not witness the fall and admitted that there were no regular inspections of the furniture in the waiting room.

(2) The trial court erred in granting the Motion for Summary Judgment when the photographs of the chair provided by the defendant remain in dispute by the plaintiff who states that this was not the chair he sat in in the waiting room on the day he was injured.

(3) The trial court erred in granting the Motion for Summary Judgment in not recognizing that the rolling chair constituted an unreasonable risk of harm and a falls risk for visitors and patients.

(4) The trial court erred by applying the Louisiana Health Emergency Powers Act to a premises liability case where liability is established when the defendant is negligent.

(5) The trial court erred in failing to acknowledge that plaintiff was not undergoing medical treatment at the time of fall as he had just checked in and was in the waiting room. Plaintiff had not seen or spoke to a medical professional. Nor was any Covid treatment being done anywhere near that area of the hospital.

(6) The trial court erred by applying the Louisiana Health Emergency Powers Act to a fact situation unrelated to Covid 19.

7

whether the district court erred when it granted summary judgment in favor of Touro, finding that Mr. Williams presented no genuine issues of material fact for his negligence claim; (2) whether the district court erred by applying the heightened standard for negligence found in the LHEPA to a factual situation unrelated to Covid-19; and (3) whether La. R.S. 29:771(B)(2)(c) is unconstitutional as applied to the facts of this case.

## *ASSIGNMENT OF ERROR NO. 1*

In his brief to this Court, Mr. Williams emphatically asserts that his claim arises under the premises liability theory of negligence. Although Mr. Williams did not specifically identify which statute is applicable to his claim, the premises liability theory of negligence is codified in La. C.C. art. 2317.1, which provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of *res ipsa loquitur* in an appropriate case.

Under this theory of recovery, our prior jurisprudence has outlined those requirements to mean that "the plaintiff has to prove by a preponderance of the

---

(7) The trial court erred in granting Plaintiff's Motion for Summary Judgment when the issue of whether the defendant was guilty of gross negligence which should be decided by the jury.

(8) The trial court erred in relying on the Affidavit of Janice Hatt who had no first-hand knowledge of any events leading up to and including Ruben Williams' fall.

(9) The trial court erred in failing to accept the unrefuted Affidavit of Ruben Williams regarding the sequence of events leading up to his injury.

(10) The trial court erred in failing to find the hospital negligent by placing one rolling chair in a waiting room with all of the remaining chairs being stationary and failing to warn anyone of the dangerous condition i.e. unlocked wheels.

evidence that: (1) the defendant owned or had custody of the thing which caused the damage; (2) the thing was defective due to a condition creating an unreasonable risk of harm; (3) the defendant had actual or constructive notice of the condition yet failed to take corrective action within a reasonable period of time; and (4) the defect was a cause of the plaintiff's harm." *George v. ABC Ins. Co.*, 22-0148, p. 6 (La. App. 4 Cir. 10/26/22), 351 So.3d 447, 453 (citing *Ramirez v. Lighthouse Prop. Ins. Corp.*, 21-0184, p. 4 (La. App. 4 Cir. 12/15/21), 333 So.3d 1286, 1290). Mr. Williams, however, avers that he is making no assertions that the chair was in any way defective, perhaps intending to invoke the more general negligence standard found in La. C.C. art. 2315, which affords, in pertinent part, that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

Regardless, the Louisiana Supreme Court recently expounded that "[w]hether a claim arises in negligence under [La. C.C.] art. 2315 or in premises liability under [La. C.C.] art. 2317.1, the traditional duty/risk analysis is the same." *Farrell v. Circle K Stores, Inc.*, 22-00849, p. 5 (La. 3/17/23), 359 So.3d 467, 473. "And now, with [La. C.C.] art. 2317.1's requirement of actual or constructive knowledge of a defect, the result under either should be the same." *Id.* "In any event, a claim under [La. C.C.] art. 2315 typically focuses on whether the defendant's conduct of allowing an unreasonably dangerous condition to exist on its premises is negligent, while a [La. C.C.] art. 2317.1 claim focuses on whether the thing itself is defective; *i.e.*, unreasonably dangerous." *Id.* "But, when the legislature eliminated strict liability for defective things in one's custody by adding [La. C.C.] art. 2317.1, a negligence standard replaced it." *Id.* "The requirements of actual or constructive knowledge of the defect and proof that the defendant

9

could have prevented damage from the defect by exercising reasonable care evidences this shift." *Id.* (citing *Malta v. Herbert S. Hiller Corp.*, 21-209, p.11 (La. 10/10/21), 333 So.3d 384, 395). Accordingly, we will employ a duty/risk analysis in order to ascertain whether liability exists for Touro.

Echoing the *Farrell* Court, this Court has explained that under the duty/risk analysis, a plaintiff must prove each of the following five elements:

> (1) The defendant had a duty to conform his conduct to a specific standard (the duty element);
>
> (2) The defendant's conduct failed to conform to the appropriate standard (the breach element);
>
> (3) The defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
>
> (4) The defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and
>
> (5) Proof of actual damages (the damages element).

*Johnson v. Evanston Ins. Co.*, 22-0804, p. 8 (La. App. 4 Cir. 6/14/23), 368 So.3d 703, 711 (quoting *Farrell*, 22-00849, p. 5, 359 So.3d at 473). "If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable." *Farrell*, 22-00849, pp. 5-6, 359 So.3d at 473. With these precepts in mind, we turn to the elements of the duty/risk analysis.

*(1) Duty*

The determination of whether the defendant owed a duty to the plaintiff is a question of law, requiring the plaintiff to point to any source of law, whether it be statutory, jurisprudential or general principles of fault, in order to establish that duty. Under the factual scenario presented in this case, La. C.C. arts. 2315, 2316,[11]

---

[11] "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." La. C.C. art. 2316.

2317[12] and 2317.1 are implicated as the sources of the duty owed. As noted by the *Farrell* Court, "[t]he general rule is that the owner or custodian of property has a duty to keep the premises in a reasonably safe condition." *Id.* at p. 6, 359 So.3d at 473. "The owner or custodian must discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence." *Id.* at p. 6, 359 So.3d at 473-74. Thus, we conclude that Touro, as owner or custodian of the premises where the alleged injuries occurred, owed a duty to Mr. Williams.

Notwithstanding, this Court has held that "[a] hospital owes a duty to exercise reasonable care for the safety of its visitors, but that duty is less than the duty owed by a merchant." *Perrin v. Ochsner Baptist Med. Ctr., LLC*, 19-0265, p. 5 (La .App. 4 Cir. 8/7/19), 364 So.3d 8, 12 (citing *Mosley v. Methodist Health Sys. Found., Inc.,* 99-3116, p. 4 (La. App. 4 Cir. 11/15/00), 776 So.2d 21, 23). This is so because Louisiana jurisprudence has consistently found that "a hospital is not a 'merchant' under La. R.S. 9:2800.6"; therefore, "hospital liability in a slip and fall case has been held to fall under the general negligence standards." *Magee v. IASIS Glenwood Reg'l Med. Ctr., LP*, 55,157, p. 6 (La. App. 2 Cir. 8/9/23), 368 So.3d 1222, 1226 (citing *Grinnell v. St. Francis Med. Ctr., Inc.*, 48,249, p. 6 (La. App. 2 Cir. 8/21/13), 156 So.3d 117, 122). "And while a hospital has a duty to exercise reasonable care in maintaining its premises in a safe condition, the 'duty owed is less than that owed by a merchant.'" *Capriotti v. Brookshire Grocery Co.*, 18-CV-

---

[12] Louisiana Civil Code article 2317 provides in relevant part that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."

00304, 2019 WL 2611037 at *5 (W.D. La. June 25, 2019) (quoting *Grinnell* 48,249, p. 7, 156 So.3d at 122).

### *(2) Breach of Duty*

As espoused by our Supreme Court, an inquiry into whether a breach of duty occurred, mandates consideration of a four-part risk/utility balancing test:

(a) The utility of the complained-of condition;

(b) The likelihood and magnitude of harm, including the obviousness and apparentness of the condition;

(c) The cost of preventing the harm; and,

(d) The nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature.

*Perrin*, 19-0265, p. 6, 364 So.3d at 13 (citing *Bufkin v. Felipe's Louisiana, LLC*, 14-0288, p. 6 (La. 10/15/14), 171 So.3d 851, 856). Accordingly, we will address these factors as necessary in order to determine whether Touro breached its duty to Mr. Williams.

### *(2)(a) Utility of the complained-of condition*

Although not couched as such, Mr. Williams asserts that there is no utility to be found in an unlocked, wheeled chair resembling a recliner in a hospital waiting room. However, as this Court noted in *Johnson*, "if the complained-of-condition was ['] meant to be there,' it often will have social utility, and in the balancing test, weigh against a finding that the premises was unsafe." *Johnson*, 22-0804, pp. 10-11, 368 So.3d at 712 (quoting *Farrell*, 22-00849, p. 7, 359 So.3d at 474). Here, it is obvious that Touro kept the chair in its waiting area in order for visitors and patients to sit while they waited. Therefore, we find that the complained-of-condition in this instance has some social utility.

*2(b) Likelihood and magnitude of the harm, including the obviousness and apparentness of the condition*

Mr. Williams argues that the presence of a chair with unlocked wheels in a hospital waiting room creates an unreasonably dangerous condition. As such, it was incumbent upon Touro to either make sure the wheels were locked or else adequately warn potential victims of the possible harm that might come from attempting to sit in that specific chair. This is particularly true, Mr. Williams asserts, considering the varying ages, degrees of disability, balance and ambulatory problems of the prospective patients and visitors who would be in the waiting room of the radiation oncology department. He further argues that discrepancies between his own account of the events leading to his alleged injuries and the version proffered through Ms. Hatt's affidavit present genuine issues of material fact that should preclude the use of summary judgment in this case.

Touro counters that summary judgment is proper because it has pointed out that Mr. Williams would be unable to prove at trial all of the necessary elements of the four-part test used in premises liability causes of action arising under La. C.C. art. 2317.1 (outlined above). In support, Touro points to the affidavit of Ms. Hatt in which she avers that she had been working at the front desk of the radiation oncology waiting room since approximately 2009, that the chair had been placed in the corner of the room near the front desk sometime in 2011 and had not been moved since, and that she was personally unaware of any reported falls or accidents in the waiting room either prior to or after Mr. Williams' alleged fall. As a result, Touro argues, Mr. Williams could not prove that the chair itself was unreasonably dangerous or that Touro had any actual or constructive knowledge that the chair's presence in the waiting room created an unreasonable risk of harm.

13

In addition, Touro directs our attention to the photographic evidence offered and admitted into the record to establish that any risk that might be associated with sitting in a chair with wheels was obviated by the fact that the condition was open and obvious.

Furthermore, Touro identifies inconsistencies contained within Mr. Williams' pleadings and his affidavit. In both his original and first supplemental petitions, Mr. Williams alleges that the chair was positioned approximately three to five feet from the wall when he attempted to sit it in it. On the first page of his opposition to Touro's motion for summary judgment, Mr. Williams again alleges that the chair was approximately three to five feet from the wall, but on page two of the same pleading, Mr. Williams asserts that the chair was only one-and-a-half feet away from the wall. Mr. Williams' affidavit is similarly inconsistent. In this document, Mr. Williams recounts that once he checked in with the receptionist, he took a few steps toward an empty chair in the corner, which he then avers was positioned two feet away from the wall. Later in this sworn statement, Mr. Williams alleges that the chair was not in the corner, but placed in a straight position along the wall. We find Touro's arguments to be persuasive.

First, we find Mr. Williams' affidavit to be self-serving. "This Court has held that an inconsistent affidavit offered only after the motion for summary judgment was filed is not sufficient to create a genuine issue of material fact where no justification for the inconsistency is offered." *Hardison v. Byrne*, 15-0111, p. 9 (La. App. 4 Cir. 12/9/15), 182 So.3d 1110, 1116 (citing *George v. Dover Elevator Co.*, 02-0821, p. 4 (La. App. 4 Cir. 9/25/02), 828 So.2d 1194, 1197). Furthermore, where, as in the case *sub judice,* the defendant has been able to meet its initial burden of proof by pointing out that the plaintiff has not raised any genuine issues

14

of material fact, the burden shifts to the plaintiff.  In order for the plaintiff to meet this burden, this Court has explained that "[t]he plaintiff may not satisfy this burden by resting on mere allegations or by filing self-serving conclusory affidavits which merely restate those allegations. The mere fact that the plaintiff contests a fact in [its] allegations is not sufficient to raise a genuine issue concerning those facts." *Id.* (quoting *Sims-Gale v. Cox Commc'ns of New Orleans*, 04-0952, p. 5 (La. App. 4 Cir. 4/20/05), 905 So.2d 311, 314).  *See also Ernest v. Dillard Dep't Stores, Inc.,* 97-2052, pp. 4-5 (La. App. 4 Cir. 12/17/97), 703 So.2d 1380, 1381-82 (in which this Court noted the inconsistency between the allegations contained in plaintiff's petition and her deposition testimony, and reversed the district court's denial of summary judgment in favor of the defendant).

Mr. Williams attempts to create issues of material fact by contesting Ms. Hatt's affidavit on the grounds that she did not witness his fall and that her account has him present in the waiting room on a different day than his statement purports. We find that neither of those issues are relevant to the inquiry of whether the chair was unreasonably dangerous.  Moreover, we conclude that the chairs depicted in the photographs submitted by Touro and those attached by Mr. Williams are the same chair.  Without any proof, Mr. Williams' assertions that the chair was replaced or was in a different position in the room on the day of his alleged injuries are merely conclusory allegations.  While credibility determinations are not permitted at the summary judgment stage, our jurisprudence has held that a court's finding that an affidavit is self-serving is not the same as a finding based upon the affiant's credibility. *Hardison*, 15-0111, p. 10, 182 So.3d at 1116.

The *Farrell* Court explained the role that an examination of whether a condition was "open and obvious is embraced within the breach of the duty

element of the duty/risk analysis and is not a jurisprudential doctrine barring recovery, but only a factor of the risk/utility balancing test." *Farrell*, 22-00849, p. 12, 359 So.3d at 478. "For a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it." *Id.* at p. 13, 359 So.3d at 478. "The open and obvious concept asks whether the complained of condition would be apparent to any reasonable person who might encounter it." *Id.* "If so, that reasonable person would avoid it, and the factor will weigh in favor of finding the condition not unreasonably dangerous." *Id.*

In the instant matter, we find that the photographs clearly show that the wheels on the chair are visible from a variety of angles. Furthermore, there is no record evidence to indicate that in the ten years that the chair had been in the waiting room any other person reported a problem with the wheeled chair. In other words, Touro had no actual or constructive notice that there was any problem with the chair itself, or by its presence in the waiting area. As a result, we find it is unlikely that anyone encountering the chair would conclude that it presented a great likelihood of harm, or that Touro breached its duty of care to its patrons.

Moreover, while the *Farrell* Court's methodology is instructive to our approach in the case *sub judice*, we also find that prior jurisprudence contains illustrative scenarios that are equally informative for analyzing claims of premises liability. This Court was previously faced with an analogous situation in *Smith v. Casino New Orleans Casino*, 12-0292 (La. App. 4 Cir. 10/3/12), 101 So.3d 507. In that case, the plaintiff, Mr. Smith, while patronizing a casino in New Orleans, Louisiana, attempted to sit in a chair located in front of a slot machine. Mr. Smith was unaware that the chair he selected was a swivel-type chair that was mixed in amongst other chairs that were fixed. As he tried to position himself into the chair,

16

the chair swiveled, causing Mr. Smith to fall and trap his leg between the slot machine and the chair, causing injury to his leg. The district court granted summary judgment in favor of the defendant casino, finding that a non-defective swivel chair did not present an unreasonable risk of harm.

Similar to Mr. Williams' argument in the instant matter, Mr. Smith asserted that the mere presence of the swivel chair created an unreasonable risk of harm because "it was completely different in design and function then [sic] the other chairs in the casino." *Id.* at pp. 7-8, 101 So.3d at 512. As a result, Mr. Smith posited that "the Casino had a duty to warn him of this dangerous situation." *Id.* at p. 8, 101 So.3d at 512. Mr. Smith acknowledged that a swivel chair was not inherently dangerous, but contended that under the circumstances it created a dangerous condition. *Id.* at 9, 101 So.3d at 513. In opposition, the casino pointed out that Mr. Smith's answers to interrogatories and sworn affidavit offered conflicting assertions. In one, Mr. Smith averred that none of the other chairs in the casino swiveled, while in the other he alleged that some of the other chairs swiveled, but not in the same manner as the chair that caused his injury.

Ultimately, the *Smith* Court concluded that the contentions offered in Mr. Smith's affidavit were no more than conclusory and speculative allegations, which were not able to satisfy his burden of proof. *Id.* at p. 10, 101 So.3d at 513. "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)). "We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.* "*We do not, however, in the absence of any proof,*

*assume that the nonmoving party could or would prove the necessary facts."* *Id.* at p. 10, 101 So.3d at 513-14. Additionally, the *Smith* Court factored into its determination that there was no evidence of any prior incidents involving swivel chairs at the casino.[13] Aside from the marginal difference between the types of chairs involved in *Smith* and those in the facts now before us, we find these cases to be nearly factually identical. Touro had no notice that the wheeled chair created an unreasonable risk of harm because there were no prior reported incidents. Furthermore, as previously discussed, Mr. Williams' self-serving, contradictory affidavit fails to establish a genuine issue of material fact.

Because we find that the evidence presented by Mr. Williams cannot prove by a preponderance of the evidence that Touro breached its duty of care to him, we conclude the district court did not err when it granted summary judgment in favor of Touro. Accordingly, having found that Mr. Williams failed to show that a genuine issue exists as to whether Touro breached its duty of care to him, we find it unnecessary to address the other two factors of the risk/utility balancing test.

This assignment of error is unpersuasive.

### ASSIGNMENT OF ERROR NO. 2

Mr. Williams contends the district court erred when it failed to grasp that his claim for damages was in the nature of a premises liability claim and not one that fell within the ambit of the LHEPA. We disagree. Touro is clearly included in LHEPA definition of health care provider found in La. R.S. 29:762(4), which provides:

---

[13] *But see Saulny v. Tricou House, L.L.C.*, 02-1424 (La. App. 4 Cir. 1/29/03), 839 So.2d 392 (wherein this Court found there to be liability on the part of the defendant restaurant when its patron sat in a chair and fell and was injured, because several other such incidents had occurred on the premises, thereby giving the restaurant constructive notice that the chairs were inherently dangerous).

"Health care provider" means a clinic, person, corporation, facility, or institution which provides health care or professional services by a physician, dentist, registered or licensed practical nurse, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, psychologist, or psychiatrist, and any officer, employee, or agent thereof acting in the course and scope of his service or employment.

As we noted earlier in this opinion, at the time of Mr. Williams' alleged injuries, La. R.S. 29:771(B)(2)(c) provided that "[d]uring a state of public health emergency, any health care providers shall not be civilly liable for causing the death of, or, injury to, any person or damage to any property except in the event of gross negligence or willful misconduct." Reading the plain language of the statute, we find no requirement that the allegations of civil liability against a health care provider need be related to the declared state of public health emergency in order for the statute to be triggered. Jurisprudence has likewise established that a cause of action does not need to arise from a claim of medical malpractice in order for the LHEPA to be activated. *See, e.g. Lathon v. Leslie Lakes Ret. Ctr.*, 54,479 (La. App. 2 Cir. 9/21/22), 348 So.3d 888.

Hence, we find that the district court did not err in its recognition that the LHEPA is implicated in this case. However, because the conclusion we reached by conducting the duty/risk and risk utility analyses did not find that Touro breached its duty to Mr. Williams, whether Touro's actions reach the level of gross negligence or willful misconduct is moot. In its oral reasons for judgment, the district court noted that Mr. Williams did not present any evidence that Touro had actual or constructive knowledge of any unreasonable risk of harm, acknowledging that under a general negligence standard, Mr. Williams' claim failed. Therefore, we find the district court's subsequent discussion of the gross negligence and willful misconduct standards to be nothing more than dicta.

*ASSIGNMENT OF ERROR NO. 3*

Finally Mr. Williams argues that La. R.S. 29:771(B)(2)(c) unconstitutionally overbroad and vague because it allows for the blanket immunity of health care providers even when they are engaged in activities that are wholly unrelated to treatment associated with Covid-19. However, we find Mr. Williams' constitutional argument is also rendered moot. While we recognize that the heightened standard of care of the LHEPA was initiated in this instance by virtue of the Governor's emergency declaration, the provisions of the La. R.S. 29:771(B)(2)(c) were never actually applied to Mr. Williams because he failed to meet his burden of proof under a general negligence standard. As the Louisiana Supreme Court has only very recently reiterated:

> Although Louisiana courts generally possess the power and authority to decide the constitutionality of challenged statutory provisions, a court is required to decide a constitutional issue only "if the procedural posture of the case and the relief sought by the appellant demand that [it] do so." **Accordingly, "courts should refrain from reaching or determining the constitutionality of legislation unless, in the context of a particular case, the resolution of the constitutional issue is essential to the decision of the case or controversy." Courts "should avoid constitutional rulings when the case can be disposed of on non-constitutional grounds."** Therefore, if this case can be disposed of on the basis of a statutory argument (*i.e.*, a non-constitutional ground), this court should base its decision on the statutory ground . . . [emphasis added]

*T.S. v. Congregation of Holy Cross S. Province, Inc.*, 22-01826, p. 4 (La. 6/27/23), 366 So.3d 64, 68 [(internal citations omitted) (alterations in original)] (quoting *Burmaster v. Plaquemines Par. Gov't*, 07-2432, p. 7 (La. 5/21/08), 982 So.2d 795, 802-803). Thus, we find that the constitutionality of La. R.S. 29:771 is not ripe for review by this Court.

## CONCLUSION

For the foregoing reasons, we find no error in the district court's January 4, 2023 judgment, which granted Touro's motion for summary judgment. Accordingly, we affirm the judgment of the district court.

**AFFIRMED**