NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CU 1135

ELIZABETH LEBLANC SCHROEDER

VERSUS

ALAN CONRAD SCHROEDER

*Judgment Rendered:* FEB 2 8 2025

********

The Family Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. 224,653

The Honorable Charlene Charlet Day, Judge Presiding

********

| | |
|---|---|
| Mary E. Roper<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee<br>Elizabeth LeBlanc Schroeder |
| Lorraine A. McCormick<br>Robin V. Cazayoux<br>Baton Rouge, Louisiana<br>and<br>Wendy L. Edwards<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellant<br>Alan Conrad Schroeder |
| Julie B. Distefano<br>Baton Rouge, Louisiana | Counsel for Minor Children<br>JES, JPS, and GMS |

********

BEFORE: McCLENDON, C.J., LANIER, AND BALFOUR, JJ.

McClendon, J. concurs in part for reasons assigned.

**LANIER, J.**

In this custody dispute, the father challenges the trial court's January 22, 2024 judgment, which modified a prior custody agreement. For the reasons that follow, we affirm the trial court's judgment and issue this memorandum opinion in compliance with Uniform Rules–Courts of Appeal, Rule 2-16.1(B).

## BACKGROUND

This custody dispute has been before the trial court several times since 2021 for hearings, motions, and a ten-day trial on the merits. According to the records, the parties, Elizabeth LeBlanc Schroeder and Alan Schroeder, were married in January 2000; five children were born during the marriage.[1] Elizabeth filed a petition for divorce in February 2021; the parties divorced in May 2022. Pursuant to a stipulated judgment signed by the parties on May 14, 2021, the trial court awarded the parties joint custody with Elizabeth named as domiciliary parent. The judgment provided that the minor children would live primarily with Elizabeth, with Alan having physical custodial periods as agreed to by the parties or based upon recommendations of the parties' and/or children's counselors or therapists. Moreover, the judgment ordered the parties and the children to participate in family counseling with Marcia A. Cox, LCSW, while continuing their own individual mental health counseling.

In September 2021, Alan filed an answer and reconventional demand to the petition for divorce, arguing that Elizabeth was thwarting the reunification counseling process and his relationship with the minor children. He requested that the trial court order a custody evaluation and establish a joint custody

---

[1] When Elizabeth initiated these legal proceedings in February 2021, all five of the parties' children were minors. Since then, the two oldest children have become majors. Thus, the remaining minor children at issue in this case are JES (DOB 9/12/07); JPS (DOB 10/8/08); and GMS (DOB 11/9/11).

implementation plan granting him physical custody as deemed appropriate by the trial court and the various mental health professionals involved in the case.

Thereafter, Elizabeth filed a "Petition For Temporary Restraining Order, along with Rule To Show Cause Why 'Reunification' Counseling Sessions Should Not Be Immediately Terminated, and Services Of The Reunification Counselor Should Not Be Dismissed." Elizabeth also filed a motion to have counsel appointed to represent the minor children pursuant to La. R.S. 9:345(B)[2] and a request for a **Watermeier**[3] hearing prior to any further proceedings. The trial court denied the motion for a temporary restraining order but set the rule to show cause for a hearing. Over the next several months, the trial court heard from numerous mental health professionals and medical doctors and intermittingly interviewed the four oldest Schroeder children.

On December 10, 2021, Elizabeth filed an *ex parte* petition for temporary sole custody, arguing that Alan was refusing to allow the children to receive psychological treatment as recommended by the family's long-time pediatrician. In an order signed on December 14, 2021, the trial court denied the motion. However, the trial court ordered that JES and JPS be evaluated by a court-appointed psychologist and that JPS begin treatment with a court-appointed psychiatrist. The trial court also appointed counsel for the minor children. Thereafter, the trial court signed two judgments on February 22 and 23, 2022,

_____

[2] As set forth in La. R.S. 9:345(B), an attorney shall be appointed to represent a child "if, in the contradictory hearing, any party presents a prima facie case that a parent or other person caring for the child has sexually, physically, or emotionally abused the child or knew or should have known that the child was being abused." La. R.S. 9:345(B).

[3] See **Watermeier v. Watermeier**, 462 So.2d 1272, 1275 (La. App. 5 Cir.), writ denied, 464 So.2d 301 (La. 1985). A **Watermeier** hearing is a hearing in chambers, outside the presence of the parents, but in the presence of their attorneys, with a record of the hearing to be made by the court reporter, to inquire as to the competency of a child to testify as to custody. **State in Interest of M.N.**, 2023-0174 (La. App. 1 Cir. 6/23/23), 370 So.3d 744, 747, n.3, writ denied, 2023-00947 (La. 9/6/23), 369 So.3d 1269.

appointing Danny Roussel, Ph.D., as a court-appointed expert to perform a custody evaluation and naming various mental health and medical professionals.

The trial court signed an "Interim Judgment" on May 3, 2022, denying Elizabeth's request to terminate reunification counseling. The trial court further ordered that reunification counseling sessions for Alan and the minor children continue with Ms. Cox until further order of the court. In a separate "Interim Judgment" also signed on May 3, 2022, the trial court awarded the parties joint custody of the then four minor children, with the children residing primarily with Elizabeth. The trial court further awarded Alan physical custody every other weekend from Friday after school until Monday morning; a weekly, two-hour dinner date with the minor children; certain holiday physical custody periods; and physical custody of the minor children for three weeks in the summer. In a June 28, 2022 "Stipulated Judgment," the trial court appointed Dr. Brandon Romano to perform psychological evaluations of JES and JPS.

On August 22, 2022, Alan filed a rule for contempt arguing that Elizabeth had violated the May 14, 2021 "Stipulated Judgment" by failing to encourage and foster a relationship between him and the minor children. Over the next two months, Alan filed rules to expand his visitation with the minor children such that the parties be awarded equal physical custody of the minor children pending the custody evaluation and/or further order of the court.

After Dr. Roussel's custody evaluation was complete, the parties entered into a "Written Stipulation" on March 28, 2023, agreeing to several issues including that Alan's physical custody would increase to every other weekend from Thursday until Monday and every other Wednesday after school until Thursday morning; that the parties would begin sessions with Renee McCarthy, a parenting coordinator; and that Alan and the children would continue in therapy with Ms.

Cox until further order of the court. The trial court signed an "Interim Stipulated Judgment" on May 1, 2023, in accordance with the parties' stipulation.

The custody trial began on June 26, 2023, and continued for ten, non-consecutive days, after which the trial court heard closing arguments, requested post-trial memoranda, and took the matter under advisement. The trial court signed a judgment[4] on January 22, 2024, ordering, among other things, that the parties maintain joint custody of the minor children with neither parent designated as domiciliary parent; that physical custody be modified by awarding equally shared periods to both parties with Alan exercising physical custody every Monday through Wednesday and Elizabeth exercising physical custody every Wednesday through Friday, with the parties rotating weekends; that the parties exercise physical custody of the minor children during the holidays and the summer as set forth in the judgment; that the parties continue to meet with the parenting coordinator, Renee McCarthy, and communicate through Our Family Wizard; that the parties and the minor children undergo individual counseling, as well as continue in reunification counseling with Ms. Cox; that Alan have final decision-making authority for all health and education issues involving the minor children; and that Elizabeth have final decision-making authority concerning all extracurricular activities involving the children.

---

[4] The trial court provided written reasons for judgment on February 8, 2024. On appeal, the parties place much focus on the trial court's reasons for judgment. However, we note that a trial court's oral or written reasons for judgment form no part of the judgment, and we are mindful that appellate courts review judgments, not reasons for judgment. **Bellard v. American Cent. Ins. Co.**, 2007-1335 (La. 4/18/08), 980 So.2d 654, 671; see also **Greater New Orleans Expressway Com'n v. Olivier**, 2002-2795 (La. 11/18/03), 860 So.2d 22, 24 ("Appeals are taken from the judgment, not the written reasons for judgment."). Judgments are often upheld on appeal for reasons different than those assigned by the trial court. The written reasons for judgment are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed. **State in the Interest of Mason**, 356 So.2d 530, 532 (La. App. 1 Cir. 1977). Thus, our review of whether the record offers a reasonable basis to support the judgment of the trial court is not solely dependent on the written reasons given by the trial court in this matter.

From this judgment, Alan has appealed. On appeal, Alan asserts the trial court erred in: (1) not awarding him sole custody despite finding that all relevant factors under La. Code Civ. P. art. 134 weighed in his favor; (2) not awarding him primary physical custody and limiting Elizabeth's custodial time; (3) failing to designate him domiciliary parent, thereby allowing Elizabeth to continue to co-parent, which, considering the trial court's analysis of the Article 134 factors is not in the children's best interests; and (4) awarding Elizabeth decision-making authority over the minor children's extracurricular activities.

## STANDARD OF REVIEW

Each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount consideration being the best interest of the child. See La. Civ. Code art. 131; **Leger v. Leger**, 2022-1113 (La. App. 1 Cir. 3/13/23), 363 So.3d 519, 528, writ denied, 2023-00512 (La. 6/26/23), 363 So.3d 1231. The best interest of the child standard governs all child custody determinations, including the determination of whether to modify the domiciliary parent designation. *Id.* The trial court is in the best position to ascertain the best interest of the child given the unique circumstances of the particular case; thus, the trial court's custody determination is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. **Moore v. Prater**, 2021-1430 (La. App. 1 Cir. 6/3/22), 342 So.3d 994, 998.

Article 134(A) provides the following non-exclusive list of factors that the trial court shall consider, along with any other relevant factors, in determining the best interest of the child:

> (1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.
>
> (2) The love, affection, and other emotional ties between each party and the child.

6

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

The weight to be given each factor is left to the discretion of the trial court. **Moore**, 342 So.3d at 1000. In making its determination, the trial court is not bound to make a mechanical evaluation of all statutory factors listed in Article 134, but should decide each case on its own facts and circumstances in light of Article 134 and all other relevant factors. **Underwood v. Underwood**, 2021-0277 (La. App. 1 Cir. 10/21/21), 332 So.3d 128, 140. One court has observed:

7

In child custody cases where two parents are fervently competing for custody and domiciliary status of the children, frequently the trial court must determine the best interest of the children solely from the testimony of the parents and their respective relatives or friends. This naturally passionate and self-interested testimony is rarely objective, leaving it to the trial court, who is in the best position to view firsthand the demeanor and tone of the witnesses, to assess the credibility of the witnesses, and decide how much weight to give the testimony in light of the factors in La. C.C. art. 134.

**Fuller v. Fuller**, 54,098 (La. App. 2 Cir. 7/21/21), 324 So.3d 1103, 1114, writ denied, 2021-01223 (La. 9/27/21), 324 So.3d 621.

In the instant case, as in most child custody cases, the trial court's determination is based heavily on factual findings. **Yepez v. Yepez**, 2021-0477 (La. App. 1 Cir. 12/22/21), 340 So.3d 36, 41. As an appellate court, we cannot set aside the trial court's factual findings unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). **Stobart v. State, Department of Transportation and Development**, 617 So.2d 880, 882 (La. 1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel its own evaluations and inferences are as reasonable. *Id.* Nevertheless, when the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts *de novo* from the entire record and render a judgment on the merits. **Rosell**, 549 So.2d at 844, n.2;

8

see also **Evans v. Lungrin**, 97-541 (La. 2/6/98), 708 So.2d 731, 735 (where one or more trial court legal errors interdicts the fact-finding process and the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record).

In support of his contention that *de novo* review is warranted in this case, Alan argues that the trial court committed legal error in applying its factual findings to this case. Alan contends that the trial court's "misapplication of the evidence to the law is so egregious" that this court should conduct a *de novo*. He further argues that "the evidence and testimony, especially by the multiple expert witnesses who all opined drastic family system changes were needed, clearly shows an extreme modification was necessary." He maintains that this error materially affected the trial court's ruling and prejudiced Alan by failing to protect the minor children's best interests. Similarly, Elizabeth asserts that the trial court's "appreciation" of the factual evidence presented in this case is not supported by a review of the actual evidence presented and that this erroneous assessment of the evidence caused the trial court to make erroneous conclusions of law. Elizabeth notes that a *de novo* review "will reveal the true picture and show the manifest error" committed in this case.

Following our review of the record in this case, we find no basis to invoke a *de novo* standard of review. Simply put, the parties seek a proverbial second bite of the apple following a very long, contentious custody hearing during which the trial court heard from over twenty-five witnesses, including the parties and three of the children; numerous medical and mental health care providers; family members; babysitters; co-workers; and other lay witnesses. The trial court also had the benefit of numerous documents introduced into evidence by the parties, including the parties' and the children's medical records; the children's school records; posts from Our Family Wizard; the custody evaluation; transcripts from numerous prior

9

hearings that included testimony of medical and mental health care providers and **Watermeier** examinations of four of the Schroeder children; and exhibits that were introduced at the prior hearings. The trial court was in the best position to observe, firsthand, the witnesses and consider the evidence. Therefore, as is required by our long-standing jurisprudence, we will accord all due discretion and deference in our review of the trial court's ruling.

## DISCUSSION

Concerning the trial court's modification of custody, Alan argues that the record overwhelmingly supports his request for sole custody. In the alternative, he asserts that he should have been designated domiciliary parent, with Elizabeth afforded limited physical custodial periods. Alan further contends that the trial court erred by splitting the allocation of decision-making authority between the parties. Based on our review of the record before us, we find no merit to Alan's arguments on appeal.

By the time this ten-day custody trial occurred in 2023, the trial court was very familiar with the parties and much of the relevant history of the case. In November and December 2021 and March 2022, the trial court heard testimony from numerous witnesses and conducted interviews of four of the Schroeder children. Dr. A. James Klein, a clinical psychologist, performed psychological evaluations on the parties in conjunction with the custody evaluation being conducted by Dr. Roussel, a licensed professional counselor. According to Dr. Klein's clinical interviews and psychological testing, there were no "serious clinical syndromes with either parent that would impact parenting and management of the minor children." He found that in some respects, the parties had very similar personality traits that had appeared to fuel their conflict and that the dynamics between the parties had "generated significant parenting issues that, by history obtained, has dramatically impacted [the] children."

10

In Dr. Roussel's February 2023 custody evaluation, he noted that "the Schroeder family's 'truths' were clearly in the eye of the beholder." Dr. Roussel opined that the parties had a marriage that was both highly functional and moderately dysfunctional at the same time. He described Alan as an "exceptional and successful orthopedic surgeon who works hard and has supported the family financially." Concerning Elizabeth, Dr. Roussel noted she was an "exceptional mother who has performed the task of parenting excellently." However, at the same time the parties failed to effectively communicate with each other regarding modification of roles and the rules of relationships among family members.

Alan told Dr. Roussel that Elizabeth wants to eliminate him so the children can heal. Alan also indicated that the children are fearful of their mother's rejection since she has eliminated him and most of her own family. Alan described himself as steady, patient, calm, consistent, genuine, pleasant, and able to provide economically. Alan indicated he talks to children with respect and maturity. Concerning Elizabeth, he said she was nurturing, affectionate, prayerful, and always available to the children.

Elizabeth told Dr. Roussel that Alan has no parenting strengths but is a great teacher. She indicated the children were afraid of their father because when something goes wrong, he ridicules and laughs at them, calls them names, and insults them. Elizabeth stated that when they were together as a family, she would intervene as a "buffer." Elizabeth noted that Alan was emotionally abusive and very controlling with the children and not empathetic to anything they feel or experience. She maintained that she wants the children to have a relationship with their father; she wants them to have good memories and healthy positive experiences. However, she added that her parenting has required more patience and left her with a sense of helplessness because she does not see Alan improving, only getting worse. Elizabeth stated she has struggled to parent when she cannot

11

protect the children and "the people who are supposed to protect them in the system are choosing to allow them to be abused."

Dr. Roussel categorized the family as "high-conflict" as evident by the parties "exhibiting extremely derogatory attitudes toward one another, ... merging their own feelings with those of their children and, at times, demonstrating very poor boundaries with their children." Dr. Roussel noted four characteristic patterns that were described by the parties, *i.e.*, enmeshment, overprotectiveness, rigidity, and lack of conflict resolution. Dr. Roussel's report contained the following description of these characteristic patterns and the effect on the family:

> [Elizabeth] reported that [Alan] was emotionally abusive to the children. Her logical response was to protect the children .... [Her] protection of her children eventually developed into the characteristic pattern of enmeshment: referring to a relative lack of effective boundaries between individuals or generations .... In enmeshed families, members consistently speak and think for each other. [Alan's] response to the children's psychosomatic symptoms and [Elizabeth's] enmeshment developed into the characteristic pattern of rigidity: referring to an excessive commitment to maintaining the family's status quo. On the surface, rigid families appear stable and untroubled.

Dr. Roussel noted further that finding a solution to this situation would not be easy. He concluded that the children's anger toward their father and "over-idealization of their mother" has resulted in the children's "chronic externalization of blame toward their father."

At that time, based on his very thorough evaluation of the parties and all of the information provided to him, Dr. Roussel recommended that the parties split custody (Elizabeth 70 percent and Alan 30 percent), with no domiciliary parent. He also recommended that a parenting coordinator be appointed to assist the parties in resolving their disputes and that the parties begin the process of engaging with counselors to assist the children with transition, modification, and adaptation.

During the custody trial, the parties testified in detail about their acrimonious relationship and the effects of their relationship on the children.

12

Moreover, the record is replete with testimony of lay witnesses who corroborated the many allegations, complaints, and stories put forth by the parties concerning each other. The trial court also had the benefit of hearing from numerous other mental health and health care providers who detailed their involvement in this case through treatment of either the parties and/or the children. The trial court had the benefit of direct observation of the parties and the difficult task of weighing credibility and the weight of all the evidence over the course of several years. Following our exhaustive review in this case, we find that the trial court's findings are reasonably supported by the record and that said findings are not manifestly erroneous. Given the record evidence and the discretion that is owed to the trial court, we cannot presume to second-guess the trial court's judgment that the minor children's best interests would be served by a modification of custody. Moreover, we find no support in the record for Alan's claim that he met his burden of proving that an award of sole custody in his favor is in the best interest of the minor children. Rather, the overwhelming testimony and evidence presented supports the trial court's judgment, maintaining joint custody, modified by awarding equally shared physical custody periods.

Also included in the judgment is language removing the designation of Elizabeth as domiciliary parent by specifically allocating the legal authority and responsibility of the parties. Physical custody is a separate matter from legal authority and responsibility over a child. **Hodges v. Hodges**, 2015-0585 (La. 11/23/15), 181 So.3d 700, 705. The term "custody" is usually broken down into two components: physical or actual custody and legal custody. *Id.* Once a trial court awards legal joint custody, La. R.S. 9:335 governs the details of that custodial arrangement, including physical custody, as well as the legal authority and responsibility of the parents. See **Hodges**, 181 So.3d at 703.

13

Louisiana Revised Statutes 9:335 provides, in pertinent part:

A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.

(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.

(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.

(c) The implementation order shall include a provision that when either party is required to evacuate this state with a minor child because of an emergency or disaster declared under the provisions of R.S. 29:721 et seq., or declared by federal authority and it becomes impossible for the parties to exercise custody as provided in the judgment, the parties shall engage in continuous communication regarding the safe evacuation of the child, the location of the child during and after the emergency or disaster, and an interim custody plan for the child until the custody provisions of the judgment can be resumed.

(3) The implementation order shall allocate the legal authority and responsibility of the parents.

B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.

(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.

(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

In addition, La. R.S. 9:336 provides that "[j]oint custody obligates the parents to exchange information concerning the health, education, and welfare of the child and to confer with one another in exercising decision-making authority."

In reaching its decision that a modification of decision-making authority was warranted, the trial court noted that despite Alan's attempts to strengthen his

relationship with the minor children, his efforts were met with animosity and opposition, specifically pointing to negative comments made by Elizabeth directly to the minor children about their father. The trial court removed Elizabeth as domiciliary parent but noted the strong bond between her and the minor children. To "prevent further disturbance of the minor children's current sense of normalcy," the trial court elected to bifurcate the decision-making authority regarding the minor children. Noting that Alan is a healthcare professional with a medical degree and clinical experience, the trial court allocated final decision-making authority for all health and education issues involving the minor children to Alan. Moreover, acknowledging Elizabeth's familiarity with the minor children's daily lives and activities, the trial court awarded final decision-making authority concerning all extracurricular activities involving the minor children to Elizabeth.

As noted, each custody case must be viewed based on the particular facts and circumstances of the case, with the overriding consideration being the best interest of the child. See La. Civ. Code art. 131; **Leger**, 363 So.3d at 528. The trial court was required to make credibility determinations in this case and confect a custody arrangement in the best interest of the minor children. Moreover, it is evident from the record that in crafting this judgment, the trial court sought to encourage more effective communication between the parties and implicitly concluded that the minor children's best interests would be served by the modified custodial arrangement, including but not limited to allowing the minor children time to foster a more stable relationship with both parents. Alan has not demonstrated that these findings are manifestly erroneous. Thus, we find no abuse of discretion by the trial court in the modified joint custody arrangement.

Lastly, in answer to this appeal, Elizabeth argued that the January 22, 2024 judgment of the trial court granting Alan more custodial time was "contrary to the law" and "adverse to the best interest of the minor children." She asserted that the

judgment was manifestly erroneous as it was not supported by the evidence and that trial court erred by failing to find a change in circumstances sufficient to warrant a modification of the custody agreement and remove her as domiciliary parent. As noted above, we have reviewed the entirety of the record before us and find no abuse of discretion in any of the trial court's rulings in this case. Thus, we deny the relief requested by Elizabeth in her answer to appeal.

## CONCLUSION

For the above and foregoing reasons, we affirm the January 22, 2024 judgment of the trial court. All costs associated with this appeal are assessed equally between Alan Conrad Schroeder and Elizabeth LeBlanc Schroeder.

**AFFIRMED; ANSWER TO APPEAL DENIED.**

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2024 CU 1135

### ELIZABETH LEBLANC SCHROEDER

### VERSUS

### ALAN CONRAD SCHROEDER

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., concurring in part.**

Although I would have found the split of physical custody (70% to Ms. Schroeder and 30% to Dr. Schroeder) recommended by the court-appointed custody evaluator to be in the best interest of the minor children, given the vast discretion of the trial court, I concur with the result reached by the majority.